Alexander Chen [SBN 245798]
Alexc@inhouseco.com
Omid Shabani [SBN 267447]
Os@inhouseco.com
INHOUSE CO.
1 Almaden Blvd Suite 810
San Jose, Ca. 95113
Telephone: (408) 918-5393
Facsimile: (714) 882-7770

Attorney for plaintiffs Asmodus, Inc. and Hsueh Cheng Yin

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASMODUS, INC.**, a California corporation, **Hsueh Cheng Yin**, an individual,<br><br>         Plaintiff,<br><br>vs.<br><br>**JUNBIAO OU,** an individual**; SHENZHEN SIGELEI TECHNOLOGY CO., LTD**, a Chinese company; **DONGGUAN SHENXI HARDWARE ELECTRONICS TECHNOLOGY CO., LTD**, a Chinese company; **WEHE**, a Chinese company; **LAISIMO**, a Chinese company; **ACM VAPE**, DBA of Ou; **GLOBAL VAPING LLC**, a Nevada limited liability company; and DOES 1 through 50, inclusive,<br><br>         Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**Federal Trademark Infringement; Common Law Trademark Infringement; Trademark Cancellation; Federal Unfair Competition Under Lanham Act Section 43(a)**<br><br>[Jury Trial Demanded] |

COMES NOW Plaintiff Asmodus, Inc. ("Asmodus"), and Hsueh Cheng "Eddie" Yin ("Yin") allege the following allegations and facts in support of this Complaint and demand a jury trial on all causes of action stated herein against the named Defendants as follows:

**NATURE OF THE ACTION**

1.      Plaintiff Yin is a serial entrepreneur, having started several start-up companies. Yin became involved in the vaping products market in 2013, and he founded a vaporizer distribution company, Plaintiff Asmodus, in 2014.

2.      Defendants Junbaio Ou ("Ou") and his alter ego companies were manufacturers for Asmodus' products who are embarking on a brazen scheme to unfairly compete with Asmodus and, ultimately, steal its business altogether. Initially, Ou threatened to delay and stop production of Asmodus' products. When Asmodus learned of Ou's perfidy, Ou had already begun to manufacture counterfeit products using Asmodus' proprietary ASMODUS, SNOW WOLF, MINIKIN, and HELVE marks, and then sold counterfeit products in competition with Asmodus.

3.      Plaintiffs seek preliminary and permanent injunctive relief to enjoin and restrain Defendants' act of trademark infringement and unfair competition; cancellation of Defendant Sigelei's SNOW WOLF trademark; an order impounding the infringing goods; damages; and punitive and exemplary relief.

**JURISDICTION AND VENUE**

4.      This action arises under the Lanham Trademark Act, 15 U.S.C. Sections 1116, 1117, and 1125(a) and (d); 17 U.S.C. Sections 101, et seq.; and 18 U.S.C. Section 1964(c). This court has original subject matter jurisdiction pursuant to 20 U.S.C. Section 1331, et Seq.; 28

U.S.C. Sections 1331 and 1338; 15 U.S.C. Sections 1116 and 1121; and 18 U.S.C. Section 1864(c).

5.     Venue lies in this District pursuant to 28 U.S.C. Sections 1391(b) and (c); 28 U.S.C. Section 1400(a); and 18 U.S.C. Section 1965.

### PARTIES

6.     Plaintiff ASMODUS, INC. is a California Corporation having its principal place of business in Paramount, California.

7.     Plaintiff HSUEH CHENG YIN is an individual who resides in Harbor City, California. Yin is also known by his nickname, "Eddie."

8.     Defendant JUNBIAO OU ("Ou") is an individual, residing both in Rancho Cucamonga, California and China, and who owns and controls Defendants Sigelei, Shenxi, Wehe, Laisimo and ACM, as those parties are defined below.

9.     Plaintiffs are informed and believe and thereon allege that Defendant SHENZHEN SIGELEI TECHNOLOGY CO., LTD ("Sigelei"), is a Chinese company having its U.S. principal place of business in Ontario, California.  Sigelei is owned and controlled by Defendant Junbiao Ou.

10.    Plaintiffs are informed and believe and thereon allege that Defendant DONGGUANG SHENXI HARDWARE ELECTRONICS TECHNOLOGY CO., LTD ("Shenxi") is a Chinese company having its principal place of business in Shenzhen, China. Shenxi is owned and controlled by Junbiao Ou.

11.    Plaintiffs are informed and believe and thereon allege that Defendant DONGGUAN WEHE ELECTRONIC TECHNOLOGY CO., LTD ("Wehe") is a Chinese company having its principal place of business in Shenzhen, China. Wehe is also sometimes

spelled as "Weihe" and are used interchangeably with Wehe. Wehe is owned and controlled by Junbiao Ou through his sister, Xiangnan Ou.

12.     Plaintiffs are informed and believe and thereon allege that Defendant SHENZHEN LSM TECHNOLOGY LTD also known as LAISIMO ("Laisimo") is a Chinese company which has its US principal place of business in Ontario, California. Laisimo is owned and controlled by Ou.

13.     Plaintiffs are informed and believe and thereon allege that Defendant ACM VAPE ("ACM") is an entity having its principal place of business in Ontario, California. ACM is a controlled and owned by Junbiao Ou.

14.     Plaintiffs are informed and believe and thereon allege that Defendant GLOBAL VAPING LLC ("Global Vaping") is a Nevada limited liability company having its principal place of business in Ontario, California. Junbiao Ou is one of the managers of Global Vaping.

15.     Plaintiffs are ignorant of the true names and capacities of defendants who are named herein under the fictitious names DOES 1-50, inclusive. Plaintiffs will seek leave of court to amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named DOE defendants is responsible in some manner for the wrongful conduct alleged herein. Plaintiffs further allege that each defendant acted in concert and participation with, as agents or representatives of, at the request of, or on behalf of Sigelei and/or Ou. Each charge and allegation alleged herein is, therefore, also hereby alleged against each fictitiously named DOE defendant.

**ALTER EGO ALLEGATIONS**

16.     Plaintiffs are informed and believe and thereon allege that some of the corporations, limited liability companies, and entities named as Defendants herein, including but

not limited to SIGELEI, SHENXI, WEHE, LAISIMO, ACM, and GLOBAL VAPING (hereinafter collectively referred to as the "Alter Ego Companies"), and each of them, were at all times relevant the alter ego entities of individual Defendants Ou by the reason of the following:

(a)     Plaintiffs are informed and believe and thereon allege that individual Defendant Ou, at all times herein mentioned, dominated, influenced, and controlled each of the Alter Ego Companies and the officers thereof as well as the business, property, and affairs of each of said corporations.

(b)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between individual Defendant Ou and each of the Alter Ego Companies; the individual and separateness of individual Defendant Ou and each of the Alter Ego Corporations have ceased.

(c)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each Alter Ego Company has been and now is a mere shell and naked framework which said individual Defendant Ou used as a conduit for the conduct of his personal business, property, and affairs.

(d)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Alter Ego Companies was created and continued pursuant to fraudulent plan, scheme, device conceived and operated by said individual Defendant Ou, whereby the income, revenue, and profit of each of the Alter Ego Companies were diverted by said individual Defendants to themselves.

(e)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Alter Ego Companies was organized by individual

Defendant Ou as a device to avoid individual liability and for the purpose of substituting financial irresponsible corporations in the place and stead of individual Defendant Ou.

(f)    By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the alter ego corporations would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

17.    Plaintiffs are informed and believe and thereon allege that, at all times hereto, the individual Defendant Ou and the Alter Ego Companies acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## FACTUAL ALLEGATIONS

### Asmodus' Business and Trademarks

18.    Yin is a serial entrepreneur who has started several start-up companies. Yin became involved in the vaping industry in 2013, and has since been the principal of a vaporizer shop in Gardena, California, that sold and distributed various third party vaping products. Yin and his team have gained much experience promoting and distributing vaping products and acquired quite a following of smaller retail purchasers. Thereafter, Yin decided to start a new company for the purpose of selling its own vaping products, and Asmodus, Inc., was incorporated in 2014.

19.    Asmodus is a nationally acclaimed distributor and seller of vaping products located in Paramount, California. Since April 2014, it has sold its products using its ASMODUS and SNOW WOLF trademarks.  Asmodus was founded and is owned by Plaintiff Yin, who is

COMPLAINT

also the registered owner of the ASMODUS word and design marks and who has granted an

exclusive license of those trademarks to Asmodus, Inc.

20.     To protect his valuable and unique products, Yin has sought U.S. trademark

registration of his marks with the United States Patent and Trademark Office ("USPTO"). He

obtained registration of its ASMODUS word mark, No. 86,258,257, in 2014 with a first-use-in-

commerce date as early as of July, 2014. He also obtained registration for the ASMODUS design

mark, No. 86,271,771, with a first use-in-commerce date as early as of July 2014.

21.     The ASMODUS design mark is shown below:



22.     In addition, Asmodus applied to register various other marks, including the

SNOW WOLF, MINIKIN, and HELVE marks, *inter alia.* These applications are currently

pending before the USPTO.

23.     Asmodus has been using the SNOW WOLF design and word mark for its

products since as early as April 2014.

24.    The authentic products sold by Asmodus prominently display the ASMODUS

marks and SNOW WOLF marks, as shown below:







25.    Asmodus' SNOW WOLF vaporizers were highly successful, and made Asmodus legendary for providing the Fat SNOW WOLF vaporizer, as shown above, that brought consumers a high end vaporizer at an affordable price.

26.    Also, Asmodus has been using the MINIKIN mark for its products since as early as 2015.

27.    The authentic products sold by Asmodus prominently display the ASMODUS marks and MINIKIN marks, as shown below:



28.    Additionally, Asmodus has been using the HELVE mark for its products since as early as 2015.

29.     The authentic products sold by Asmodus prominently display the ASMODUS marks and HELVE mark.

**Collaboration between Asmodus and IPV**

30.     Around March 2014, Plaintiff Yin and Defendant Ou met at a convention in Las Vegas, Nevada. Ou represented to Yin that Ou was a majority shareholder of IPV Technology Co., Ltd (Shenzhen, China) ("IPV"), a small and unknown manufacturer of vaping products. IPV sold vaping products under its PIONEER4YOU brand, and it was looking to establish itself and break into the American market. Yin represented to Ou that Yin had much experience in start-ups and had successfully established several businesses in the United States, and that Yin was preparing to establish a new start-up for vaporizers.

31.     On or about March 25, 2014, Yin and Ou agreed that collaboration would be mutually beneficial. Accordingly, they signed an agreement by which Ou would provide Yin with IPV vaping products, and, in exchange, Yin would promote IPV and distribute IPV products, including its PIONEER4YOU brand. Furthermore, Yin would be IPV's exclusive distributor in the United States.

32.     In or around April 2014, Yin incorporated Asmodus, Inc. as a distributor of vaping products. Initially, Asmodus distributed IPV products as well as Asmodus' own private label products, including Asmodus' SNOW WOLF product line.

33.     The SNOW WOLF vaping product is designed by Asmodus and was commissioned to be manufactured by Sigelei.

34.     Business was booming, and the collaboration was highly successful. Through its marketing and promotions, Asmodus made a name for itself as a premier distributor of high quality vaping products. The SNOW WOLF vaporizer was wildly popular and successful.

Furthermore, IPV's PIONEER4YOU brand had grown from virtually unknown to a popular name brand in the vaping market.

35.     Seeing the success of IPV's PIONEER4YOU brand as a result of Yin's promotion, Ou decided to take back the U.S. distribution rights of PIONEER4YOU from Yin. Initially, in or around September 2014, Ou began to delay shipments to Yin. Then, in or around June 2015, IPV stopped sending its PIONEER4YOU products to Yin altogether. Instead, IPV cut out Asmodus and started selling its products in the United States itself.

36.     When Yin expressed his dissatisfaction, Ou insisted that IPV no longer needed Asmodus but that SIGELEI, which was manufacturing the SNOW WOLF products for Asmodus, would be willing to work with Asmodus. Therefore, Ou insisted that Asmodus promote SIGELEI vaping products.

## Collaboration of Asmodus and Sigelei

37.     Rather than facing the likely possibility of having no product to distribute or to sell, in or around June 2015, Yin acquiesced to Ou's demands and started to promote and distribute SIGELEI vaping products.

38.     In addition to distributing SIGELEI products, Asmodus continued to develop its own products. Inspired by the success of SNOW WOLF products, Asmodus introduced its second generation of SNOW WOLF vaping products. The second-generation SNOW WOLF vaporizer was designed by Asmodus and manufactured by Laisimo.

39.     Through Yin's effort and talent in marketing and promotion, SIGELEI, which was previously a small, unknown company, was able to establish itself and became well known. Moreover, Asmodus' own second general SNOW WOLF vaporizer was also a huge success. This further solidified Asmodus' image and its ASMODUS and SNOW WOLF marks as a premier vaping product line.

40.     Unbeknown to Yin or Asmodus, however, Defendant Sigelei had secretly applied for a federal trademark registration of Asmodus' prized SNOW WOLF word mark with the USPTO on or about July 2, 2014. On February 24, 2015, thanks to the efforts of Sigelei's trademark registration attorney Bin Li and other attorneys at the Law Offices of Bin Li & Associates, Sigelei's registration of Asmodus' SNOW WOLF trademark was issued by the USPTO.

41.     After Sigelei fraudulently obtained registration of Asmodus' SNOW WOLF trademark, Sigelei became confident in its control over Yin and Asmodus. Once again, Ou delayed delivery of products to Asmodus. By then, Ou had considerable leverage over Asmodus—as the person who owns and controls Defendant SIGELEI, Ou controlled how many SIGELEI Products Asmodus would receive for distribution as well as how much Asmodus would have to pay for those products. Moreover, Ou also controlled the manufacturing of Asmodus' SNOW WOLF vaping products. Most importantly, Ou believed that since Sigelei controlled Asmodus' SNOW WOLF trademark—the mark with which Asmodus built its reputation—Sigelei therefore controlled the fate of Asmodus.

42.     In an effort to apply pressure, Sigelei eventually stopped shipment of SNOW WOLF vaping products to Asmodus altogether.

### Defendants' Counterfeiting

43.     Defendants Sigelei, Laisimo, Shenxi, and Wehe, all of which are companies that are controlled and/or owned by Ou, have acted individually or in cooperation with each other to manufacture, promote, distribute, and sell counterfeit ASMODUS products, including Asmodus' SNOW WOLF products, MINIKIN products, and HELVE products.

44.     On or around March 16, 2016, Defendant Ou purchased an office and warehouse located at 1500 S. Milliken Ave, Unit F, Ontario, CA 91761 ("Milliken Warehouse"). Thereafter,

the Milliken Warehouse served as Ou's base of operations for counterfeit products labeled as Asmodus. In fact, according to Sigelei's website (www.Sigelei.com), Laisimo's website (www.Sigelei.com), ACM's website (www.acmvape.com), all of these companies use the Milliken Warehouse as its main office and warehouse for SIGELEI products, LAISIMO products, and counterfeit ASMODUS products. Also, according to Sigelei's website, Global Vaping LLC (www.globalvaping.com) is now Sigelei's warranty center for its products.

45.     Defendants Sigelei, Laisimo, Shenxi, and Wehe, all of which are companies that are controlled and/or owned by Ou, have acted individually or in cooperation with each other to manufacture, promote, distribute, and sell counterfeit ASMODUS products, including Asmodus' SNOW WOLF products, MINIKIN products, and HELVE products.

46.     Specifically, at one time, both Sigelei and Laisimo were the authorized manufacture of Asmodus' SNOW WOLF products. In particular, Sigelei manufactured the first generation SNOW WOLF vaporizer, and Laisimo manufactured the second and third generation SNOW WOLF vaporizer. While Defendants were only authorized to manufacturer genuine SNOW WOLF products for Asmodus, Laisimo in fact started manufacturing counterfeit SNOW WOLF products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge.

47.     Moreover, Defendants have also taken measures to directly trade on the goodwill and popularity of Asmodus' products for their own infringing products. For example, Asmodus has only authorized the manufacturing of 75w SNOW WOLF electrical vaporizers, and have never authorized manufacturing of 90w SNOW WOLF electrical vaporizers. Yet, Defendants manufactured, distributed, and sold counterfeit SNOW WOLF electrical vaporizers that are 90w.

48.     Not only do the Defendants use the SNOW WOLF word mark, but also Asmodus'

1  SNOW WOLF design mark, which is pending with the USPTO. Further still, Defendants use the

2  ASMODUS word and design trademark.

3        49.     Defendants use the ASMODUS word mark in the product itself, which is

4  displayed on the digital screen upon turning on the vaporizer.  The user manual also contains

5  references to the ASMODUS trademark.

6        50.     The photograph below depicts exemplars of counterfeit ASMODUS and SNOW

7  WOLF products sold by Defendants:

8

9

10

11    

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51.    As can be seen, the counterfeit 90w SNOW WOLF vaporizer uses the SNOW WOLF word and design on the box and on the vaporizer itself. Furthermore, when the vaporizer is powered on, the screen displays the word "ASMODUS" and the user manual also uses and makes reference to the word "ASMODUS."

52.    Moreover, Defendants are trading on and exploiting the extremely valuable goodwill that Asmodus has built for SNOW WOLF by passing off their products as genuine SNOW WOLF products. Specifically, Defendant Sigelei has sold the 90w SNOW WOLF electric vaporizer through third parties.

53.    Similarly, Shenxi and Wehe were also the authorized manufacture of Asmodus' MINIKIN vaping products. While Shenxi and Wehe were only authorized to manufacturer genuine MINIKIN products for Asmodus, Shenxi and Wehe in fact started manufacturing counterfeit MINIKIN products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge.

54.    In particular, at the request of Asmodus, Defendants Shenxi and Wehe had manufactured MINIKIN in a variety of colors, including the "gloss finish blue" color. However, after Ou decided to cut off the relationship with Yin, Ou stopped sending products to Asmodus. Instead, Shenxi and Wehe started manufacturing MINIKIN vaping products that were for Asmodus, and Ou, through his Alter Ego Companies, sold them to third parties.

55.    In fact, while Asmodus had once authorized Shenxi and Wehe to manufacture the MINIKIN in the gloss finish blue color ("Blue MINIKIN"), Shenxi and Wehe never delivered these Blue MINIKIN products to Asmodus. Therefore, Asmodus never had these Blue MINIKIN

products, and thus could not have sold them. Yet, there are Blue MINIKIN products being sold

1  in the marketplace.

2          56.     The photograph below depicts exemplars of counterfeit Blue MINIKIN products

3  sold by Defendants:



57.     Asmodus introduced its HELVE vaping products in or around December 2015.

Shenxi and Wehe were also the authorized manufacture of Asmodus' HELVE vaping products.

While Shenxi and Wehe were only authorized to manufacturer genuine HELVE products for

Asmodus, Shenxi and Wehe in fact started manufacturing counterfeit HELVE products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge.

58.    Asmodus' HELVE vaping products also contains the ASMODUS design mark, and Defendants have blatantly copied the design and trademark wholesale, without making any alterations, and passed off the counterfeits as genuine ASMODUS products. The counterfeit HELVE vaping products produced also includes the ASMODUS design mark.

59.    The photograph below depicts exemplars of counterfeit HELVE products sold by Defendants:

 

60.    Furthermore, Ou through ACM Vape has been distributing and selling counterfeit MINIKIN vaping products and HELVE vaping products. ACM Vape also serves as Ou's warranty and service center through its Milliken Warehouse.

**Defendants' Exploitation of Plaintiffs' Marks**

61.     Defendants have chosen to trade on and exploit the extremely valuable goodwill that Asmodus has developed through its SNOW WOLF marks with the intent to arrogate that goodwill to itself. In furtherance of that object and unbeknown to Yin or Asmodus, Defendant Sigelei had secretly applied for a federal trademark registration of Asmodus' prized SNOW WOLF word mark with the USPTO on or about July 2, 2014.

62.     On February 24, 2015, Sigelei's registration of Asmodus' SNOW WOLF trademark was issued by the USPTO.

63.     Thereafter, Defendants have engaged in a coordinated effort to both directly counterfeit genuine SNOW WOLF products and also pass their products off as new SNOW WOLF products. Not only are Defendants selling counterfeit 75w SNOW WOLF electric vaporizers, they are also selling the 90w SNOW WOLF electric vaporizers that they pass off as genuine SNOW WOLF products. Sigelei and Laisimo, through their owner, Ou, are now aggressively marketing and selling purported SNOW WOLF products in a manner designed to cause confusion with genuine SNOW WOLF products.

64.     Furthermore, Defendants Sigelei and Laisimo have also been manufacturing, distributing, and selling unauthorized Asmodus' vaping products bearing the ASMODUS word and design marks. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine ASMODUS products.

65.     Further still, Defendants Shenxi and Wehe, through Ou, have also engaged in a coordinated effort to counterfeit genuine MINIKIN and HELVE products. Defendants have sold and are still selling counterfeit MINIKIN and HELVE products. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine MINIKIN and HELVE products.

## FIRST CLAIM FOR RELIEF

### (Statutory Trademark Infringement by Plaintiffs against all Defendants)

### (15 U.S.C. § 1114)

66.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-65 of this Complaint.

67.     Plaintiff Yin owns, and Asmodus has the exclusive right to use, the federally registered ASMODUS word and design marks (collectively "ASMODUS Trademarks") in connection with Asmodus' products. The ASMODUS Trademarks are highly distinctive and fanciful, and has earned a strong secondary meaning within the vaping products market.

68.     Defendants' use of "Asmodus" marks on directly competing products has infringed, and is infringing, the ASMODUS Trademarks.

69.     Defendants' use of the infringing marks is likely to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and/or association of Defendants and their products with those of Asmodus, and is likely to cause confusion, mistake, or deceive consumers as to the origin, sponsorship, and/or approval by Asmodus of Defendants' products. Such likelihood of confusion is magnified by Defendants' intentional use of deceptively similar product packaging.

70.     Defendants' use of the infringing Asmodus marks enables Defendants to benefit unfairly from Asmodus' reputation and success, thus giving Defendants' infringing products sales and commercial value they would not otherwise have.

71.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and, indeed, Defendants Sigelei and its owner Ou had actually served as manufacturer of Asmodus' products. Further, Defendants had actual notice and knowledge, or constructive notice, of Plaintiffs' registered trademarks.

72.     Defendants' infringement of Asmodus' registered trademarks as described herein has been and continues to be intentional, willful, and without regard to the rights of Asmodus and Yin.

73.     Asmodus and Eddie Yin are informed and believe, and on that basis allege, that Defendants have gained profits by virtue of their infringement of the ASMODUS trademarks.

74.     Plaintiffs have suffered and will continue to suffer irreparable harm from Defendants' infringement of their registered trademarks insofar as their invaluable goodwill is being misappropriated by Defendants' continuing infringement. Plaintiffs Asmodus and Yin have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, and goodwill and confusion of potential customers flowing from Defendants' infringing activities. Pursuant to 15 U.S.C. § 1116, Plaintiffs Asmodus and Yin are entitled to preliminary and permanent injunctive relief against Defendants' continuing infringement of their Plaintiffs' registered trademarks. Unless enjoined, Defendants will continue their infringing conduct.

75.     Because Defendants' actions have been committed with the intent to damage Asmodus and Yin and to confuse and deceive the public, Asmodus and Yin are entitled to recover Defendants' profits, treble their actual damages, an award of costs, and, this being an exceptional case, reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).

### SECOND CLAIM FOR RELIEF

### (Common Law Trademark Infringement of the SNOW WOLF Trademarks by Plaintiffs against all Defendants)

76.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-75 of this Complaint.

77.     Beginning in 2014 and continuing thereafter, Plaintiffs have made commercial use of their SNOW WOLF trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

78.     Within the market for vaping products, the SNOW WOLF word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meeting as identifying Asmodus' products and/or as coming from a single source. For the foregoing reasons, Defendants have falsely represented to the trade and consuming public that they are selling authentic SNOW WOLF products or that their products evolved from it.

79.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' SNOW WOLF trademarks.

80.     Defendants' use of their infringing marks is likely to cause confusion, and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

81.     Defendants' use of SNOW WOLF marks has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business a market share and commercial value that it would not otherwise enjoy.

82.     Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights. Plaintiffs have sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

83.     Plaintiffs will suffer and are suffering irreparable harm from Defendants' infringement of SNOW WOLF marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' SNOW WOLF trademarks. Unless enjoined, Defendants will continue their infringing conduct.

### THIRD CLAIM FOR RELIEF

### (Common Law Trademark Infringement of the MINIKIN Trademark by Plaintiffs against all Defendants)

84.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-83 of this Complaint. Beginning in 2015 and continuously thereafter, Plaintiffs have made commercial use of their MINIKIN trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

85.     Within the market for vaping products, the MINIKIN word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meeting as identifying Asmodus' products and/or as coming from a single source. For those reasons, Defendants have falsely misrepresented that they are selling authentic MINIKIN products or that their products evolved from same to the trade and consuming public.

86.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' MINIKIN trademark.

87.   Defendants' use of their infringing marks is likely to cause confusion and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, and/or association of Defendants with Plaintiffs, or as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

88.   Defendants' use of the MINIKIN mark has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business a market share and commercial value that it would not otherwise enjoy.

89.   Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights. Plaintiffs have sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

90.   Plaintiffs will suffer and are suffering irreparable harm due to Defendants' infringement of MINIKIN marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' MINIKIN trademarks. Unless enjoined, Defendants will continue their infringing conduct.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**<u>(Common Law Trademark Infringement of the HELVE Trademark by Plaintiffs against all Defendants)</u>**

91.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-90 of this Complaint.

92.     Beginning in 2015 and continuously thereafter, Plaintiffs have made commercial use of their HELVE trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

93.     Within the market for vaping products, the HELVE word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meeting as identifying Asmodus' products and/or as coming from a single source. For that reasons, Defendants have falsely misrepresented that they are selling authentic HELVE products or that their products evolved from same to the trade and consuming public.

94.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' HELVE trademark.

95.     Defendants' use of their infringing marks is likely to cause confusion and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, and/or association of Defendants with Plaintiffs, or as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

96.     Defendants' use of HELVE mark has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business market share and commercial value that it would not otherwise enjoy.

97.     Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights. Plaintiffs have

sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

98.     Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' infringement of HELVE marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' HELVE trademarks. Unless enjoined, Defendants will continue their infringing conduct.

## FIFTH CLAIM FOR RELIEF

### (Trademark Cancellation by Plaintiffs against Sigelei)

99.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-98 of this Complaint.

100.    Asmodus is the owner of the SNOW WOLF word and design trademarks. The SNOW WOLF marks are highly distinctive and fanciful, and enjoy a strong secondary meaning within the vaping products market.

101.    On or about July 2, 2014, Defendant Sigelei applied for a federal registration of Asmodus' SNOW WOLF word mark (the "Infringing Mark"). On or about February 24, 2015, Defendant Sigelei obtained the federal registration for the Infringing Mark pursuant to Certificate of Registration No. 4,694,744 in International Class 34.

102.    The Infringing Mark is being used by Defendants to misrepresent the source of goods Defendants sell in connection with the use of that mark.

103.    Plaintiff Asmodus is, accordingly, entitled to an order directing that the Infringing Mark be, and hereby is, canceled.

**SIXTH CLAIM FOR RELIEF**

**(Lanham Act Section 43(a) violation by Plaintiffs against all Defendants)**

**(15 U.S.C. § 1125(a))**

104.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-103 of this Complaint.

105.    Defendants' misconduct as alleged herein is likely to cause, and is causing, confusion between Defendants' products and Asmodus' products in that consumers are likely to, and do, confuse Defendants' products as originating or affiliated with Asmodus, including that Defendants have used and are using (I) Asmodus' ASMODUS word and design marks; (ii) Asmodus' SNOW WOLF word and design marks; (iii) Asmodus' MINIKIN mark; (iv) Asmodus' HELVE mark; and (v) virtually identical product packaging copied from Asmodus.

106.    Defendants have deliberately adopted, imitated, and mimicked the trademarks of Plaintiffs' products and packaging.

107.    Defendants' actions have been, and are being, undertaken with the intent to deceive consumers, cause confusion and mistake, and interfere with the ability of consumers to identify the source of goods by trademark, appearance, and packaging. Through their conduct, Defendants have unlawfully exploited the goodwill and reputation that Plaintiffs Asmodus and Yin have developed in their marks and business and Defendants are unlawfully deriving benefit therefrom.

108.    Defendants' acts alleged herein are without the consent of Plaintiffs Asmodus and Yin and constitute the use of terms, symbols, devices, or combinations thereof that are false or misleading within the meaning of 15 U.S.C. §1125 and are likely to cause confusion, mistake, or

to deceive as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval, of Defendants' goods by Asmodus and/or Eddie Yin within the meaning of 15 U.S.C. § 1125. Defendants' actions discussed and alleged herein also constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs have been, and are being, damaged by Defendants' acts.

109.    Defendants' conduct has been intentional and willful, and is specifically calculated to trade on the goodwill that Plaintiffs Asmodus and Yin have developed through their successful ASMODUS products, including the SNOW WOLF vaping products, MINIKIN vaping products, and HELVE vaping products. By the aforesaid acts, Defendants have infringed, and are likely to continue to infringe, Plaintiffs' rights in their ASMODUS products, including SNOW WOLF vaping products, MINIKIN vaping products, and HELVE vaping products.

110.    Plaintiff Asmodus and Yin have been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

111.    For each act of infringement, Plaintiffs Asmodus and Yin are entitled to recover their actual damages as well as Defendants' profits from such infringement.

112.    Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' acts of false designation of origin or affiliation. Plaintiffs also have been, and will continue to be, irreparably harmed and damaged by Defendants' conduct in that their invaluable goodwill is being eroded by Defendants' continuing acts of infringement. Plaintiffs have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, goodwill, and confusion of potential customers flowing from Defendants' unlawful activities. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to stop Defendants' continuing acts of false designation of origin or affiliation and continued infringement of Plaintiffs' trademarks.

113.   Because Defendants' actions have been committed with the intent to damage Plaintiffs Asmodus and Yin and to confuse and deceive the public, Plaintiffs are entitled to recover treble damages, and award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Asmodus, Inc., and Hsueh Cheng "Eddie" Yin pray as follows:

1.   That Defendants, their agents, servants, employees, and all persons acting in concert with them, be preliminarily and permanently enjoined form engaging in the unlawful conduct set forth herein, including that they be enjoined from the following: directly or indirectly infringing Plaintiffs' ASMODUS and SNOW WOLF word and design trademarks; making any commercial use, use in commerce, or references to the ASMODUS or SNOW WOLF marks; and from otherwise engaging in unfair competition with Asmodus.

2.   An order directing the United States Patent and Trademark Office to cancel Defendants' "SNOW WOLF" mark registered pursuant to Certificate of Registration No. 4,691,744.

3.   That Asmodus recover its actual damages and lost profits.

4.   That Defendants be ordered to pay punitive and exemplary damages in a sum sufficient to punish and make an example of them, and deter them and others from similar wrongdoing.

5.   That Defendants be ordered to pay trebled general and special damages, together with interest thereon, and costs and attorneys' fees, incurred by reason of their violations of 18 U.S.C. § 1962(c)-(d).

6.   That Defendants pay to Plaintiffs the full cost of this action and Plaintiffs' attorney's fees and investigator's fees.

7.     That Plaintiffs have such other and further relief as the Court may deem just and proper.

**DATED:** June 13, 2016                              **INHOUSE CO.**

By: _____
         Alexander Chen, Esq.
         Omid Shabani, Esq.
         Attorney for Plaintiffs Asmodus, Inc. and
         Hsueh Cheng "Eddie" Yin