1  Alexander Chen [SBN 245798]
   Alexc@inhouseco.com
2  Omid Shabani [SBN 267447]
   Os@inhouseco.com
3  INHOUSE CO.
   1 Almaden Blvd Suite 810
4  San Jose, Ca. 95113
5  Telephone: (408) 918-5393
   Facsimile: (714) 882-7770
6
7  Attorney for Plaintiffs, Asmodus, Inc. and Hsueh Cheng Yin

8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12

13

| | |
|---|---|
| 14  **ASMODUS, INC.**, a California corporation, **Hsueh Cheng Yin**, an individual, | Case No.:  5:16-cv-03305 |
| 15 | |
| 16                    Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| 17    vs. | **Federal Trademark Infringement; Common Law Trademark Infringement; Trademark Cancellation; Federal Unfair Competition Under Lanham Act Section 43(a); Copyright Infringement; Trade Libel; California Statutory Unfair Competition; California Common Law Unfair Competition; Breach of Oral Contract; Fraud; Fraudulent Misrepresentation; Negligent Misrepresentation; Racketeer Influenced And Corrupt Organization Act Violation; Conspiracy to Violate Rico; Unjust Enrichment; Breach of Oral Contract** |
| 18 | |
| 19  **JUNBIAO OU, an individual; SHENZHEN SIGELEI TECHNOLOGY CO., LTD**, a | |
| 20  Chinese company; **DONGGUAN SHENXI HARDWARE ELECTRONICS** | |
| 21  **TECHNOLOGY CO., LTD**, a Chinese company; **DONGGUAN WEHE** | |
| 22  **ELECTRONIC TECHNOLOGY Co. Ltd.**, a Chinese company; **SHENZHEN LSM** | |
| 23  **TECHNOLOGY Ltd.**, a Chinese company; ACM Supplies Inc; **GLOBAL VAPING** | |
| 24  **LLC**, a Nevada limited liability company; **ISAAC WALKER**, an individual and DOES | |
| 25  1 through 50, inclusive, | |
| 26                    Defendants. | [Jury Trial Demanded] |

27

28

-- 1 --
FIRST AMENDED COMPLAINT

1   COME NOW Plaintiffs Asmodus, Inc. ("Asmodus") and Hsueh Cheng "Eddie" Yin

2   ("Yin") (collectively, the "Plaintiffs") who hereby present the following allegations and facts in

3   support of this First Amended Complaint, and demand a jury trial on all causes of action stated

4   herein against the named Defendants as follows:

5

6

7                                **NATURE OF THE ACTION**

8       1.      This is an action to prevent the complete theft of a business—lock, stock, and

9   barrel. Plaintiff Yin is a serial entrepreneur, having started several start-up companies. Yin

10  became involved in the vaping products market in 2013, and he founded a vaporizer distribution

11  company, plaintiff Asmodus, in 2014.

12      2.      Defendants Junbaio Ou ("Ou") and his alter ego companies were manufacturers

13  for Asmodus' products who are embarking on a brazen scheme to unfairly compete with

14  Asmodus and, ultimately, steal its business altogether.  Initially, Ou threatened to delay and stop

15  production of Asmodus' products. When Asmodus learned of Ou's perfidy, Ou had already

16  begun to manufacture counterfeit products using Asmodus' proprietary ASMODUS, SNOW

17  WOLF, MINIKIN, and HELVE marks, and then sold counterfeit products in competition with

18  Asmodus.

19

20      3.      Ou embarked on a campaign to co-opt the market for ASMODUS products, and to

21  hijack Asmodus' entire business. Ou told Asmodus' distributors, retailers, and retailers that

22  Defendant Sigelei is the owner of ASMODUS products.

23

24      4.      Once Ou through his companies launched counterfeit ASMODUS products and

25  engaged in their campaign to steal Asmodus' business and customers, Asmodus' worldwide sales

26  dropped astronomically. By purporting to be sellers of genuine ASMODUS products, Defendants

27

28

have destroyed virtually all of Asmodus' sales and are now cutting substantially into its foreign sales. Unless enjoined, Ou will complete what he has set out to achieve—the wholesale theft of Asmodus' business.

5.      Plaintiffs seek preliminary and permanent injunctive relief to enjoin and restrain Defendants' act of trademark infringement, copyright infringement, false and deceptive advertising, and unfair competition; cancellation of Defendant Sigelei's SNOW WOLF trademark; an order impounding the infringing goods; restitution of Defendants' illicit gains; damages; and punitive and exemplary relief.

<b><u>JURISDICTION AND VENUE</u></b>

6.      This action arises under the Lanham Trademark Act, 15 U.S.C. Sections 1116, 1117, and 1125(a) and (d); 17 U.S.C. Sections 101, et seq.; and 18 U.S.C. Section 1964(c). This court has original subject matter jurisdiction pursuant to 20 U.S.C. Section 1331, et Seq.; 28 U.S.C. Sections 1331 and 1338; 15 U.S.C. Sections 1116 and 1121; and 18 U.S.C. Section 1864(c).

7.      Venue lies in this District pursuant to 28 U.S.C. Sections 1391(b) and (c); 28 U.S.C. Section 1400(a); and 18 U.S.C. Section 1965.

<b><u>PARTIES</u></b>

8.      Plaintiff ASMODUS, INC. is a California corporation having its principal place of business in Paramount, California.

9.      Plaintiff HSUEH CHENG YIN is an individual who resides in Harbor City, California. Yin is also known by his nickname, "Eddie."

10.      Defendant JUNBIAO OU ("Ou") is an individual, residing both in Rancho Cucamonga, California and China, and who owns and controls Defendants Sigelei, Shenxi, Wehe, Laisimo and ACM, as those parties are identified and defined below.

11.     Plaintiffs are informed and believe and thereon allege that Defendant SHENZHEN SIGELEI TECHNOLOGY CO., LTD ("Sigelei"), is a Chinese company having its U.S. principal place of business in Ontario, California.  Sigelei is owned and controlled by Defendant Junbiao Ou.

12.     Plaintiffs are informed and believe and thereon allege that Defendant DONGGUANG SHENXI HARDWARE ELECTRONICS TECHNOLOGY CO., LTD ("Shenxi") is a Chinese company having its principal place of business in Shenzhen, China. Shenxi is owned and controlled by Junbiao Ou.

13.     Plaintiffs are informed and believe and thereon allege that Defendant DONGGUAN WEHE ELECTRONIC TECHNOLOGY CO., LTD ("Wehe") is a Chinese company having its principal place of business in Shenzhen, China. Wehe is also sometimes spelled as "Weihe" and are used interchangeably with Wehe. Wehe is owned and controlled by Junbiao Ou through his sister, Xiangnan Ou.

14.     Plaintiffs are informed and believe and thereon allege that Defendant SHENZHEN LSM TECHNOLOGY LTD, also known as LAISIMO ("Laisimo") is a Chinese company which has its US principal place of business in Ontario, California.  Laisimo is owned and controlled by Ou.

15.     Plaintiffs are informed and believe and thereon allege that Defendant ACM Supplies Inc.  ("ACM") is an entity having its principal place of business in Diamond Bar, California. On information and belief, ACM is a controlled and owned by Junbiao Ou.

16.     Plaintiffs are informed and believe and thereon allege that Defendant GLOBAL VAPING LLC ("Global Vaping") is a Nevada limited liability company having its principal place of business in Ontario, California. Junbiao Ou is one of the managers of Global Vaping.

-- 4 --
FIRST AMENDED COMPLAINT

17.     Plaintiffs are informed and believe and thereon allege that Defendant ISAAC WALKER ("Walker") is an individual residing in Oakland, California.

18.     Plaintiffs are ignorant of the true names and capacities of defendants who are named herein under the fictitious names DOES 1-50, inclusive. Plaintiffs will seek leave of court to amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named DOE defendants is responsible in some manner for the wrongful conduct alleged herein. Plaintiffs further allege that each defendant acted in concert and participation with, as agents or representatives of, at the request of, or on behalf of Sigelei and/or Ou. Each charge and allegation alleged herein is, therefore, also hereby alleged against each fictitiously named DOE defendant.

**<u>ALTER EGO ALLEGATIONS</u>**

19.     Plaintiffs are informed and believe and thereon allege that some of the corporations, limited liability companies, and entities named as Defendants herein, including but not limited to SIGELEI, SHENXI, WEHE, LAISIMO, ACM, and GLOBAL VAPING (hereinafter collectively referred to as the "Alter Ego Companies"), and each of them, were at all times relevant the alter ego entities of individual Defendants Ou by the reason of the following:

(a)     Plaintiffs are informed and believe and thereon allege that individual Defendant Ou, at all times herein mentioned, dominated, influenced, and controlled each of the Alter Ego Companies and the officers thereof as well as the business, property, and affairs of each of said corporations.

(b)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between individual Defendant Ou and each of the Alter Ego Companies; the individual and

separateness of individual Defendant Ou and each of the Alter Ego Corporations have ceased.

(c)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each Alter Ego Company has been and now is a mere shell and naked framework which said individual Defendant Ou used as a conduit for the conduct of his personal business, property, and affairs.

(d)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Alter Ego Companies was created and continued pursuant to fraudulent plan, scheme, device conceived and operated by said individual Defendant Ou, whereby the income, revenue, and profit of each of the Alter Ego Companies were diverted by said individual Defendants to themselves.

(e)     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Alter Ego Companies was organized by individual Defendant Ou as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of individual Defendant Ou.

(f)     By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the alter ego corporations would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

20.     Plaintiffs are informed and believe and thereon allege that, at all times hereto, the individual Defendant Ou and the Alter Ego Companies acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

FIRST AMENDED COMPLAINT

### FACTUAL ALLEGATIONS

### Asmodus' Business and Trademarks

21.     Yin is a serial entrepreneur who has started several start-up companies. Yin became involved in the vaping industry in 2013, and has since been the principal of a vaporizer shop in Gardena, California, that sold and distributed various vaping products. Yin and his team have gained much experience promoting and distributing vaping products and acquired quite a following of smaller retail purchasers. Thereafter, Yin decided to start a new company for the purpose of selling its own vaping products, and Asmodus, Inc., was incorporated in 2014.

22.     Asmodus is a nationally recognized distributor and seller of vaping products located in Paramount, California.  Since April 2014, it has sold its products using its ASMODUS and SNOW WOLF trademarks.  Asmodus was founded and is owned by Plaintiff Yin, who is also the registered owner of the ASMODUS word and design marks and who has granted an exclusive license of those trademarks to Asmodus, Inc.

23.     To preserve his exclusive ownership and protect the commercial integrity of his valuable and unique products, Yin obtained U.S. trademark registration of his marks with the United States Patent and Trademark Office registration of its ASMODUS word mark, No. 86,258,257, in 2014, with a first-use-in commerce date as of July, 2014.

24.     Yin also obtained registration for the ASMODUS design mark, No. 86,271,771, with a first use-in-commerce date of July 2014.

25.     Yin obtained U.S. Copyright registration of the ASMODUS design, No. VA 1-908-593 in 2014, with a first publication date of April 3, 2014. The copyrighted ASMODUS design is shown below:

FIRST AMENDED COMPLAINT

26.     In addition, Asmodus applied to register various other trademarks, including the SNOW WOLF, MINIKIN, and HELVE marks. These applications are currently pending before the USPTO.

27.     Asmodus has been using the SNOW WOLF design and word mark for its products since April 2014.

28.     The authentic products sold by Asmodus prominently display the ASMODUS marks and SNOW WOLF marks, as shown below:

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




FIRST AMENDED COMPLAINT

29.     Asmodus' SNOW WOLF vaporizers were highly successful, and made Asmodus legendary for providing the Fat SNOW WOLF vaporizer, as shown above, that brought consumers a high end vaporizer at an affordable price.

30.     Also, Asmodus has been using the MINIKIN mark for its products since as early as 2015.

31.     The authentic products sold by Asmodus prominently display the ASMODUS marks and MINIKIN marks, as shown below:



32.     Additionally, Asmodus has been using the HELVE mark for its products since as early as 2015.

33.     The authentic products sold by Asmodus prominently display the ASMODUS marks and HELVE mark.

## Collaboration between Asmodus and IPV

34.     Around March 2014, Plaintiff Yin and Defendant Ou met at a convention in Las Vegas, Nevada. Ou represented to Yin that Ou was a majority shareholder of IPV Technology Co., Ltd (Shenzhen, China) ("IPV"), a small and unknown manufacturer of vaping products. IPV sold vaping products under its PIONEER4YOU brand, and it was looking to establish itself and break into the American market. Yin represented to Ou that Yin had much experience in start-ups and had successfully established several businesses in the United States, and that Yin was preparing to establish a new start-up for vaporizers.

35.     On or about March 25, 2014, Yin and Ou agreed that collaboration would be mutually beneficial. Accordingly, they signed an agreement by which Ou would provide Yin with IPV vaping products, and, in exchange, Yin would promote IPV and distribute IPV products, including its PIONEER4YOU brand. Furthermore, Yin would be IPV's exclusive distributor in the United States.

36.     In or around April 2014, Yin incorporated Asmodus, Inc. as a distributor of vaping products. Initially, Asmodus distributed IPV products as well as Asmodus' own private label products, including Asmodus' SNOW WOLF product line.

37.     The SNOW WOLF vaping product is designed by Asmodus and was commissioned to be manufactured by Sigelei.

38.     Business was booming, and the collaboration was highly successful. Through its marketing and promotions, Asmodus made a name for itself as a premier distributor of high quality vaping products. The SNOW WOLF vaporizer was wildly popular and successful. Furthermore, IPV's PIONEER4YOU brand had grown from virtually unknown to a popular name brand in the vaping market.

39.     Seeing the success of IPV's PIONEER4YOU brand as a result of Yin's promotion, Ou decided to take back the U.S. distribution rights of PIONEER4YOU from Yin. Initially, in or around September 2014, Ou began to delay shipments to Yin. Then, in or around June 2015, IPV stopped sending its PIONEER4YOU products to Yin altogether. Instead, IPV cut out Asmodus and started selling its products in the United States itself.

40.     When Yin expressed his dissatisfaction, Ou insisted that IPV no longer needed Asmodus but that SIGELEI, which was manufacturing the SNOW WOLF products for Asmodus, would be willing to work with Asmodus. Therefore, Ou insisted that Asmodus promote SIGELEI vaping products.

## Collaboration Between Asmodus and Sigelei

41.     Rather than facing the likely possibility of having no product to distribute or to sell, in or around June 2015, Yin acquiesced to Ou's demands and started to promote and distribute SIGELEI vaping products.

42.     As part of promoting and distributing Sigelei's products, Asmodus also agreed to serve as Sigelei's U.S. warranty and service center for Sigelei's products. In exchange, Sigelei agreed pay Asmodus for the cost for replacement parts and units.

43.     In addition to distributing SIGELEI products, Asmodus continued to develop its own products. Inspired by the success of SNOW WOLF products, Asmodus introduced its second generation of SNOW WOLF vaping products. The second-generation SNOW WOLF vaporizer was designed by Asmodus and manufactured by Laisimo.

44.     Through Yin's effort and talent in marketing and promotion, SIGELEI, which was previously a small, unknown company, was able to establish itself and became well known. Moreover, Asmodus' own second general SNOW WOLF vaporizer was also a huge success.

This further solidified Asmodus' image and its ASMODUS and SNOW WOLF marks as a premier vaping product line.

45.     Unbeknown to Yin or Asmodus, however, Defendant Sigelei had secretly applied for a federal trademark registration of Asmodus' prized SNOW WOLF word mark with the USPTO on or about July 2, 2014. On February 24, 2015, thanks to the efforts of Sigelei's trademark registration attorney Bin Li and other attorneys at the Law Offices of Bin Li & Associates, Sigelei's registration of Asmodus' SNOW WOLF trademark was issued by the USPTO.

46.     After Sigelei fraudulently obtained registration of Asmodus' SNOW WOLF trademark, Sigelei became confident in its control over Yin and Asmodus. Once again, Ou delayed delivery of products to Asmodus. By then, Ou had considerable leverage over Asmodus—as the person who owns and controls Defendant SIGELEI, Ou controlled how many SIGELEI Products Asmodus would receive for distribution as well as how much Asmodus would have to pay for those products. Moreover, Ou also controlled the manufacturing of Asmodus' SNOW WOLF vaping products. Most importantly, Ou believed that since Sigelei controlled Asmodus' SNOW WOLF trademark—the mark with which Asmodus built its reputation—Sigelei therefore controlled the fate of Asmodus.

47.     In an effort to apply pressure, Sigelei eventually stopped shipment of SNOW WOLF vaping products to Asmodus altogether.

**Ou and his Alter Ego Companies Terminated Collaboration with Asmodus**

48.     In or around February, 2016, Yin traveled to China to meet with Ou, and in or around March 2016, Yin and Ou met again in Rancho Cucamonga, California, in an attempt to mend their relationship and resolve the situation amicably. However, by then, it became clear to Yin that he could not mend his relationship with Ou.

49.     By March 2016, Asmodus had been performing warranty service repairs for Sigelei, since in or around June 2015, and Sigelei had not remitted any payment to Asmodus for the cost of replacement parts and units. Asmodus has performed warranty services for 3,979 units of Sigelei products, of which 3,408 units were replaced, 562 units were repaired, and 9 units were voided. In total, Asmodus incurred a cost of $150,920 for replacing and sending 2,679 units back to the manufacturer, Sigelei.

50.     In addition, Asmodus has had to perform warranty service repairs for its own SNOW WOLF vaping products that were manufactured by Ou's Alter Ego Companies as a result of defects. In particular, Asmodus has performed warranty services for 3,147 units of SNOW WOLF, of which 2,814 units were replaced, 186 units were repaired, and 147 were voided. In total, Asmodus incurred a cost of $151,201 for replacing and sending 2,679 units back to the manufacturers.

51.     As a result of Sigelei's failure to remit payment for Asmodus' cost of replacement parts and units for its warranty services for Sigelei, Asmodus stopped handling warranty services for Sigelei products as of March 30, 2015

**Defendants Ou and Alter Ego Companies' Counterfeiting**

52.     Defendants Sigelei, Laisimo, Shenxi, and Wehe, all of which are companies that are controlled and/or owned by Ou, have acted individually or in cooperation with each other to manufacture, promote, distribute, and sell counterfeit ASMODUS products, including Asmodus' SNOW WOLF products, MINIKIN products, and HELVE products.

53.     On or around March 16, 2016, Defendant Ou purchased an office and warehouse located at 1500 S. Milliken Ave, Unit F, Ontario, CA 91761 ("Milliken Warehouse"). Thereafter, the Milliken Warehouse served as Ou's base of operations for counterfeit products labeled as Asmodus products.  In fact, according to Sigelei's website (www.Sigelei.com), Laisimo's

website (www.Sigelei.com), ACM's website (www.acmvape.com), all of these companies use the Milliken Warehouse as its main office and warehouse for SIGELEI products, LAISIMO products, and counterfeit ASMODUS products. Also, according to Sigelei's website, Global Vaping LLC (www.globalvaping.com) is now Sigelei's warranty center for its products.

54.      Defendants Sigelei, Laisimo, Shenxi, and Wehe, all of which are companies that are controlled and/or owned by Ou, have acted individually or in cooperation with each other to manufacture, promote, distribute, and sell counterfeit ASMODUS products, including Asmodus' SNOW WOLF products, MINIKIN products, and HELVE products.

55.      Specifically, at one time, both Sigelei and Laisimo were the authorized manufacturers of Asmodus' SNOW WOLF products. In particular, Sigelei manufactured the first generation SNOW WOLF vaporizer, and Laisimo manufactured the second and third generation SNOW WOLF vaporizer. While Defendants were only authorized to manufacturer genuine SNOW WOLF products for Asmodus, Laisimo in fact started manufacturing counterfeit SNOW WOLF products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge.

56.      Defendants have also taken measures to directly trade on the goodwill and popularity of Asmodus' products for their own infringing products. For example, Asmodus has only authorized the manufacture of 75w SNOW WOLF electrical vaporizers, and has never authorized the manufacture of 90w SNOW WOLF electrical vaporizers. Yet, Defendants manufactured, distributed, and sold counterfeit SNOW WOLF electrical vaporizers that are 90w.

57.      Not only do the Defendants use the SNOW WOLF word mark, but also Asmodus' SNOW WOLF design mark, which is pending with the USPTO. Further still, Defendants use the ASMODUS word and the copyrighted design trademark.

58.    Defendants use the ASMODUS word mark in the product itself, which is displayed on the digital screen upon turning on the vaporizer.  The user manual also contains references to the ASMODUS trademark.

59.    The photograph below depicts exemplars of counterfeit ASMODUS and SNOW WOLF products sold by Defendants:

60.    As can be seen, the counterfeit 90w SNOW WOLF vaporizer uses the SNOW WOLF word and design on the box and on the vaporizer itself. Furthermore, when the vaporizer is powered on, the screen displays the word "ASMODUS" and the user manual also uses and

  

makes reference to the word

"ASMODUS."

61.    Furthermore, Defendants are trading on and exploiting the extremely valuable goodwill that Asmodus has built for SNOW WOLF by passing off their products as genuine SNOW WOLF products. Specifically, Defendant Sigelei has sold the 90w SNOW WOLF electric vaporizer through third parties.

62.    Similarly, Shenxi and Wehe were also the authorized manufacture of Asmodus' MINIKIN vaping products. While Shenxi and Wehe were only authorized to manufacturer

genuine MINIKIN products for Asmodus, Shenxi and Wehe in fact started manufacturing counterfeit MINIKIN products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge.

63.     In particular, at the request of Asmodus, Defendants Shenxi and Wehe had manufactured MINIKIN in a variety of colors, including the "gloss finish blue" color. However, after Ou decided to cut off the relationship with Yin, Ou stopped sending products to Asmodus. Instead, Shenxi and Wehe started manufacturing MINIKIN vaping products that were for Asmodus, and Ou, through his Alter Ego Companies, sold them to third parties.

64.     In fact, while Asmodus had once authorized Shenxi and Wehe to manufacture the MINIKIN in the gloss finish blue color ("Blue MINIKIN"), Shenxi and Wehe never delivered these Blue MINIKIN products to Asmodus. Therefore, Asmodus never had these Blue MINIKIN products, and thus could not have sold them. Yet, there are Blue MINIKIN products being sold in the marketplace.

65.     The photograph below depicts exemplars of counterfeit Blue MINIKIN products sold by Defendants:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15        66.      Asmodus introduced its HELVE vaping products in or around December 2015.

16   Shenxi and Wehe were also the authorized manufacture of Asmodus' HELVE vaping products.

17   While Shenxi and Wehe were only authorized to manufacturer genuine HELVE products for

18   Asmodus, Shenxi and Wehe in fact started manufacturing counterfeit HELVE products by

19   producing unauthorized products that used Asmodus' protected trademarks, which were sold to

20   Asmodus' customers and other third parties without Asmodus' knowledge.

21
22        67.      Asmodus' HELVE vaping products also contains the ASMODUS design mark,

23   and Defendants have blatantly copied the design and trademark wholesale, without making any

24   alterations, and passed off the counterfeits as genuine ASMODUS products. The counterfeit

25   HELVE vaping products produced also includes the ASMODUS design mark.

26
27
28

68.     The photograph below depicts exemplars of counterfeit HELVE products sold by Defendants:

 

69.     Furthermore, Ou through ACM Vape has been distributing and selling counterfeit MINIKIN vaping products and HELVE vaping products. ACM Vape also serves as Ou's warranty and service center through its Milliken Warehouse.

### **Defendants' Exploitation of Plaintiffs' Marks**

70.     Defendants have chosen to trade on and exploit the extremely valuable goodwill that Asmodus has developed through its SNOW WOLF marks with the intent to arrogate that goodwill to itself. In furtherance of that objective and unbeknown to Yin or Asmodus, Defendant Sigelei had secretly applied for a federal trademark registration of Asmodus' prized SNOW WOLF word mark with the USPTO on or about July 2, 2014.

71.     On February 24, 2015, Sigelei's registration of Asmodus' SNOW WOLF trademark was issued by the USPTO.

72.     Thereafter, Defendants have engaged in a coordinated effort to both directly counterfeit genuine SNOW WOLF products and also pass their products off as new SNOW

WOLF products. Not only are Defendants selling counterfeit 75w SNOW WOLF electric vaporizers, they are also selling the 90w SNOW WOLF electric vaporizers that they pass off as genuine SNOW WOLF products. Sigelei and Laisimo, through their owner, Ou, are now aggressively marketing and selling purported SNOW WOLF products in a manner designed to cause confusion with genuine SNOW WOLF products.

73.    Furthermore, Defendants Sigelei and Laisimo have also been manufacturing, distributing, and selling unauthorized Asmodus' vaping products bearing the ASMODUS word and design marks. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine ASMODUS products.

74.    Further still, Defendants Shenxi and Wehe, through Ou, have also engaged in a coordinated effort to counterfeit genuine MINIKIN and HELVE products. Defendants have sold and are still selling counterfeit MINIKIN and HELVE products. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine MINIKIN and HELVE products.

**Defendant Ou's Breach of Oral Contract**

75.    In or around September 2015, Yin agreed to lend monies to Ou towards utilities and other miscellaneous bills (collectively "Bills"), which Ou agreed to repay. Specifically, Defendant Ou owns a parcel of real property at which he resides located at 12511 Vista Verde Drive, Rancho Cucamonga, California 91739, however, Ou travels often and is frequently away from home.

76.    Therefore, Ou requested that Yin advance money and pay Ou's Southern California Gas bills, Edison electricity bills, and Cucamonga Valley Water District Bills, *inter alia*. From September 2015 to March 2016, Yin has paid Ou's bills in the total amount of $6,135.57.

77.     Yin has repeatedly requested that Ou repay Yin for these payments, but Ou has refused to pay.

**Defendant Resellers' Infringement of Plaintiffs' Trademark**

78.     Defendants Issac Walker is also trading on and exploiting the extremely valuable goodwill that Asmodus has built for SNOW WOLF by selling counterfeit products.

79.     In particular, Walker is promoting, advertising, offering for sale, and selling, through eBay.com, the 200w SNOW WOLF electric vaporizer. Walker is using the eBay seller ID "iwalk29924" and the counterfeit SNOW WOLF electric vaporizer is being shipped from Oakland, California.

80.     The 200w SNOW WOLF electric vaporizer from Walker bears the Asmodus warranty card with the Asmodus word mark and design mark. In fact, the LCD screen on the vaporizer displays "Laisimo" when turning on, yet it displays "Asmodus" when turning off.

**FIRST CLAIM FOR RELIEF**

**(Statutory Trademark Infringement against Defendants Ou and Alter Ego Companies)**

**(15 U.S.C. § 1114)**

81.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-80 of this First Amended Complaint.

82.     Plaintiff Yin owns, and Asmodus has the exclusive right to use, the federally registered ASMODUS word and design marks (collectively "ASMODUS Trademarks") in connection with Asmodus' products. The ASMODUS Trademarks are highly distinctive and fanciful, and has earned a strong secondary meaning within the vaping products market.

83.     Defendants' use of "Asmodus" marks on directly competing products has infringed, and is infringing, the ASMODUS Trademarks.

84.     Defendants' use of the infringing marks is likely to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and/or association of Defendants and their products with those of Asmodus, and is likely to cause confusion, mistake, or deceive consumers as to the origin, sponsorship, and/or approval by Asmodus of Defendants' products. Such likelihood of confusion is magnified by Defendants' intentional use of deceptively similar product packaging.

85.     Defendants' use of the infringing Asmodus marks enables Defendants to benefit unfairly from Asmodus' reputation and success, thus giving Defendants' infringing products sales and commercial value they would not otherwise have.

86.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and, indeed, Defendants Sigelei and its owner Ou had actually served as manufacturer of Asmodus' products. Further, Defendants had actual notice and knowledge, or constructive notice, of Plaintiffs' registered trademarks.

87.     Defendants' infringement of Asmodus' registered trademarks as described herein has been and continues to be intentional, willful, and without regard to the rights of Asmodus and Yin.

88.     Asmodus and Eddie Yin are informed and believe, and on that basis allege, that Defendants have gained profits by virtue of their infringement of the ASMODUS trademarks.

89.     Plaintiffs have suffered and will continue to suffer irreparable harm from Defendants' infringement of their registered trademarks insofar as their invaluable goodwill is being misappropriated by Defendants' continuing infringement. Plaintiffs Asmodus and Yin have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, and goodwill and confusion of potential customers flowing from Defendants' infringing activities. Pursuant to 15 U.S.C. § 1116, Plaintiffs Asmodus and Yin are

entitled to preliminary and permanent injunctive relief against Defendants' continuing infringement of their Plaintiffs' registered trademarks. Unless enjoined, Defendants will continue their infringing conduct.

90.     Because Defendants' actions have been committed with the intent to damage Asmodus and Yin and to confuse and deceive the public, Asmodus and Yin are entitled to recover Defendants' profits, treble their actual damages, an award of costs, and, this being an exceptional case, reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### (Common Law Trademark Infringement of the SNOW WOLF Trademarks against Defendants Ou and Alter Ego Companies)

91.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-90 of this First Amended Complaint.

92.     Beginning in 2014 and continuing thereafter, Plaintiffs have made commercial use of their SNOW WOLF trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

93.     Within the market for vaping products, the SNOW WOLF word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meaning as identifying Asmodus' products and/or as coming from a single source. As alleged, Defendants have falsely represented to the trade and consuming public that they are selling authentic SNOW WOLF products or that their products are related to it.

94.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' SNOW WOLF trademarks.

95.     Defendants' use of their infringing marks is likely to cause confusion, and has already caused confusion and mistake, and is likely to and already has deceived the consuming public as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

96.     Defendants' use of SNOW WOLF marks has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business a market share and commercial value that it would not otherwise enjoy.

97.     Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights. Plaintiffs have sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

98.     Plaintiffs will suffer and are suffering irreparable harm from Defendants' infringement of SNOW WOLF marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' SNOW WOLF trademarks. Unless enjoined, Defendants will continue their infringing conduct.

**THIRD CLAIM FOR RELIEF**

**(Common Law Trademark Infringement of the MINIKIN Trademark against Defendants Ou and Alter Ego Companies)**

99.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-98 of this First Amended Complaint.  Beginning in 2015 and continuously thereafter, Plaintiffs have made commercial use of their MINIKIN trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

100.     Within the market for vaping products, the MINIKIN word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meaning as identifying Asmodus' products and/or as coming from a single source. For those reasons, Defendants have falsely misrepresented that they are selling authentic MINIKIN products or that their products evolved from same to the trade and consuming public.

101.     Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' MINIKIN trademark.

102.     Defendants' use of their infringing marks is likely to cause confusion and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, and/or association of Defendants with Plaintiffs, and as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

103.     Defendants' use of the MINIKIN mark has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business a market share and commercial value that it would not otherwise enjoy.

104.     Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights.  Plaintiffs have sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

105.    Plaintiffs will suffer and are suffering irreparable harm due to Defendants' infringement of MINIKIN marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' MINIKIN trademarks. Unless enjoined, Defendants will continue their infringing conduct.

## **FOURTH CLAIM FOR RELIEF**

### **(Common Law Trademark Infringement of the HELVE Trademark against Defendants Ou and Alter Ego Companies)**

106.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-105 of this First Amended Complaint.

107.    Beginning in 2015 and continuously thereafter, Plaintiffs have made commercial use of their HELVE trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

108.    Within the market for vaping products, the HELVE word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meaning as identifying Asmodus' products and/or as coming from a single source. Defendants have falsely misrepresented that they are selling authentic HELVE products or that their products evolved from same to the trade and consuming public.

109.    Prior to Defendants' first use of their infringing marks, Defendants were aware of Asmodus' business and had actual notice and knowledge, or constructive notice, of Plaintiffs' HELVE trademark.

-- 26 --
FIRST AMENDED COMPLAINT

110.    Defendants' use of their infringing marks is likely to cause confusion and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, and/or association of Defendants with Plaintiffs, or as to the origin, sponsorship, and/or approval by Plaintiffs of Defendants' goods, services, and commercial activities.

111.    Defendants' use of HELVE mark has enabled them to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business market share and commercial value that it would not otherwise enjoy.

112.    Defendants' infringement of Plaintiffs' trademarks as described herein has been and continues to be intentional, willful, and without regard for Plaintiffs' rights. Plaintiffs have sustained damages as a direct and proximate result of Defendants' infringement of Plaintiffs' trademarks as alleged herein.

113.    Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' infringement of HELVE marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendants' continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendants' infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continuing infringement of Plaintiffs' HELVE trademarks. Unless enjoined, Defendants will continue their infringing conduct.

## **FIFTH CLAIM FOR RELIEF**

### **(Trademark Cancellation against Defendant Sigelei)**

114.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-113 of this Complaint.

115.    Asmodus is the owner of the SNOW WOLF word and design trademarks. The SNOW WOLF marks are highly distinctive and fanciful, and enjoy a strong secondary meaning within the vaping products market.

116.    On or about July 2, 2014, Defendant Sigelei applied for a federal registration of Asmodus' SNOW WOLF word mark (the "Infringing Mark"). On or about February 24, 2015, Defendant Sigelei obtained the federal registration for the Infringing Mark pursuant to Certificate of Registration No. 4,694,744 in International Class 34.

117.    The Infringing Mark is being used by Defendants to misrepresent the source of goods Defendants sell in connection with the use of that mark.

118.    Plaintiff Asmodus is, accordingly, entitled to an order directing that the Infringing Mark be, and hereby is, canceled.

**SIXTH CLAIM FOR RELIEF**

**(Lanham Act Section 43(a) Violation against  Defendants Ou and Alter Ego Companies)**

**(15 U.S.C. § 1125(a))**

119.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-118 of this First Amended Complaint.

120.    Defendants' misconduct as alleged herein is likely to cause, and is causing, confusion between Defendants' products and Asmodus' products in that consumers are likely to, and do, confuse Defendants' products as originating or affiliated with Asmodus, including that Defendants have used and are using (i) Asmodus' "ASMODUS" word and design marks; (ii) Asmodus' "SNOW WOLF" word and design marks; (iii) Asmodus' "MINIKIN" mark; (iv) Asmodus' "HELVE" mark; and (v) virtually identical product packaging unlawfully copied from Asmodus.

121.    Defendants have deliberately adopted, imitated, and mimicked the trademarks of Plaintiffs' products and packaging.

122.    Defendants' actions have been, and are being, undertaken with the intent to deceive consumers, cause confusion and mistake, and interfere with the ability of consumers to identify the source of goods by trademark, appearance, and packaging. Through their conduct, Defendants have unlawfully exploited the goodwill and reputation that Plaintiffs Asmodus and Yin have developed in their marks and business, and Defendants are unlawfully deriving benefit therefrom.

123.    Defendants' acts alleged herein are without the consent of Plaintiffs Asmodus and Yin, and constitute Defendants' unlawful use of terms, symbols, devices, or combinations thereof that are false or misleading within the meaning of 15 U.S.C. §1125.  Defendants' acts alleged herein are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval, of Defendants' goods by Asmodus and/or Eddie Yin within the meaning of 15 U.S.C. § 1125.  Defendants' actions alleged herein also constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Plaintiffs have been, and are being, damaged by Defendants' acts.

124.    Defendants' conduct has been intentional and willful, and is specifically calculated to trade on and unlawfully appropriate for themselves the goodwill that Plaintiffs Asmodus and Yin have developed through their successful ASMODUS products, including the SNOW WOLF vaping products, MINIKIN vaping products, and HELVE vaping products.  By the aforesaid acts, Defendants have infringed, and are likely to continue to infringe, Plaintiffs' rights in their ASMODUS products, including SNOW WOLF vaping products, MINIKIN vaping products, and HELVE vaping products.

125.    Plaintiff Asmodus and Yin have been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

126.    For each act of infringement, Plaintiffs Asmodus and Yin are entitled to recover their actual damages as well as Defendants' profits from such infringement.

127.    Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' acts of false designation of origin or affiliation.  Plaintiffs also have been, and will continue to be, irreparably harmed and damaged by Defendants' conduct in that their valuable goodwill is being unlawfully appropriated and eroded by Defendants' continuing acts of infringement.  Plaintiffs have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, goodwill, and confusion of potential customers flowing from Defendants' unlawful activities. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to stop Defendants' continuing acts of false designation of origin or affiliation and continued infringement of Plaintiffs' trademarks.

128.    Because Defendants' actions have been committed with the intent to damage Plaintiffs Asmodus and Yin, and to confuse and deceive the public, Plaintiffs are entitled to recover treble damages, and an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## **SEVENTH CLAIM FOR RELIEF**

### **(Copyright Infringement against Defendants Ou and Alter Ego Companies)**

129.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-128 of this First Amended Complaint.

130.    Asmodus is the owner of valid copyright in works that are fixed in tangible media of expression. These copyrights include, without limitation, that which is the subject of United States Copyright registration numbers VA 1-908-593.

131.    Defendants Sigelei, Ou, and DOES 1-50, have reproduced, created derivative works from and otherwise infringed upon Asmodus' exclusive rights in its protected works without Asmodus' authorization.  Defendants' act violates Asmodus' exclusive rights under the Copyright Act, including without limitation Asmodus' exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

132.    Defendants' infringement (and substantial contributions to the infringement) of Asmodus' copyrighted works is and has been knowingly made without Asmodus' consent and for commercial purposes and the direct financial benefit of Defendants. On information and belief, Defendants also have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing upon Asmodus' copyrighted works. They have failed to do so in order to deliberately further their unlawful appropriation and significant financial gains in the infringement of Asmodus' copyrighted works. Accordingly, Defendants have engaged in direct, contributory, and vicarious infringement of Asmodus' copyrighted works.

133.    Defendants' infringement of Asmodus' copyrighted works has been willful and intentional, engaged in flagrant disregard for Asmodus' lawful rights.

134.    By virtue of Defendants' infringing acts, Asmodus is entitled to recover its actual damages plus Defendants' profits, its costs of suit and attorneys' fees, statutory damages, punitive damages, and all other relief permitted under the Copyright Act.

135.    Defendants' actions have caused and will continue to cause irreparable damage to Asmodus, for which Asmodus has no remedy at law. Unless Defendants are restrained from continuing their infringement of Asmodus' copyrights, there injuries will continue to occur in the

future. Accordingly, Asmodus is entitled to preliminary and permanent injunctive relief restraining Defendants from further infringement.

### EIGHTH CLAIM FOR RELIEF

### (Trade Libel against Defendants Ou and Alter Ego Companies)

136.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-135 of this First Amended Complaint.

137.    Defendants have each individually and in combination made statements concerning Asmodus' ownership, trademarks, and products, which were false, inaccurate, misleading, deceptive, and untrue.

138.    Defendants knew that such statements were false, inaccurate, misleading, deceptive, and untrue, or acted with reckless disregard of the truth of those statements, both at the times the statements were made and thereafter.

139.    As a direct and proximate result of such statements, Asmodus' distributors, retailers, and customers have ceased, reduced, or diminished their business relationships, dealings, and orders placed with Asmodus.

140.    As a result of the aforementioned conduct, Asmodus has suffered damages in an amount which has not yet been ascertained but which includes the loss of Asmodus' distributors, retailers, and customers.

141.    The aforementioned conduct was despicable, wanton, oppressive, malicious, duplicitous, and performed with willful and conscious disregard of Asmodus' rights, and with the intent to deprive Asmodus of its rights. Accordingly, Asmodus is entitled to an award of punitive and exemplary damages.

## NINTH CLAIM FOR RELIEF

### (California Statutory Unfair Competition against Defendants Ou and Alter Ego Companies)

142.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-141 of this First Amended Complaint.

143.    Defendants' acts described above constitute fraudulent and unlawful business practices as defined by California Business & Profession Code § 17200 et seq.

144.    Plaintiffs have valuable and protectable rights in their ASMODUS and SNOW WOLF word and design marks. Those marks are inherently distinctive and, through Plaintiffs' creation and use in the marketplace, have come to be associated in the market with Asmodus, which is well known as the source of the products on which these trademarks are used.

145.    Defendants' sale of their infringing products is likely to cause confusion as to the source of the Asmodus products, and is likely to cause consumers, distributors, resellers, and retailers to be confused or mistaken into believing that there is a relationship between Defendants and Asmodus, or that Defendants' products are affiliated with or sponsored by Asmodus.

146.    The fraudulent business practices of Defendants, including infringement of Asmodus' copyrighted materials further constitute unfair competition and fraudulent business practice.

147.    As a direct and proximate result of Defendants' wrongful conduct, Asmodus and Yin have been injured in fact, have lost money and profits, and such harm will continue unless and until Defendants' act are enjoined by the Court. Asmodus and Yin have no adequate remedy at law for Defendants' continuing violation of their rights.

148.    Defendants should be required to restore to Asmodus and Yin any and all profits

earned as a result of their unlawful and fraudulent actions, or provide Asmodus and Yin with any

other restitution or relief as the Court deems appropriate.

**TENTH CLAIM FOR RELIEF**

**(California Common Law Unfair Competition against Defendants Ou and Alter Ego**

**Companies)**

149.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-150 of this

First Amended Complaint.

150.    Plaintiffs' genuine ASMODUS products have acquired a secondary meaning

among distributors, resellers, retailers, and consumers in the vaping product market associated

with, and emanating from, Asmodus.

151.    Defendants, through the marketing of their directly competing products, have

unfairly imitated the name and appearance of Asmodus' products and, in doing so, have

competed unfairly with Asmodus.

152.    Asmodus is, therefore, entitled to an award of its actual damages and, because

Defendants acted with oppression, fraud, and malice, Asmodus is further entitled to an award of

punitive and exemplary damages in an amount to be proved at trial.

**ELEVENTH CLAIM FOR RELIEF**

**(Breach of Oral Contract against Ou, Sigelei, and Laisimo)**

153.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-152 of this

First Amended Complaint.

154.    Defendants and Plaintiffs had an oral contract wherein Plaintiff Asmodus would

acts as Defendants Sigelei's and Laisimo's U. S. warranty and service center for their vaping

FIRST AMENDED COMPLAINT

products, and in exchange Defendants Sigelei and Laisimo would provide payment to Asmodus for its labor and cost for parts and replacements.

155.    Defendant Ou breached the oral contracts by failing to have Sigelei or Laisimo remit any payment to Asmodus for its labor and cost for parts and replacements.

156.    Defendants' breach goes to the heart of the oral contract and, accordingly, plaintiff is entitled to recover from Defendants payments for labor and cost of parts and replacements, plus prejudgment interest, and Plaintiffs' damages directly and proximately caused by Defendants' breach of the oral contracts.

## TWELFTH CLAIM FOR RELIEF

### (Fraud against Defendants Ou, Sigelei, and Laisimo)

157.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-156 of this First Amended Complaint.

158.    Plaintiffs were induced to enter into the oral contracts alleged above and to serve as the U.S. warranty and service center for Plaintiffs' Sigelei and Laisimo vaping products, by Defendants' false representation alleged above, including but not limited to Defendant Ou's representation that Sigelei and Laisimo would remit payment to Asmodus for its labor and cost of parts and replacements for serving as the U.S. warranty and service center for Sigelei and Laisimo. In truth, Defendants' representation was false, and the Defendants never intended to remit payment for the labor and cost of parts and replacements incurred by Asmodus.

159.    Plaintiff is informed and believes, and upon that basis alleges, that Defendants knew that the forgoing representations were false and untrue at the time that they were made, and that the representations were made with the intent to deceive and defraud Plaintiff.

160.     Plaintiff reasonably relied on the representations made by the Defendants, and, inter alia, provided labor, parts and replacements to repair and service defective vaping products on behalf of Sigelei and Laisimo.

161.     As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount according to proof at trial.

162.     Plaintiff is informed and believes, and upon that basis alleges, that in committing the foregoing wrongful acts, Defendants, including Sigelei and Laisimo, through its officer, director, or managing agent, Defendant Ou, acted intentionally, with malice and in conscious disregard of Plaintiff's rights and Plaintiff's resulting and foreseeable damages. As a result, Plaintiff also is entitled to the award of punitive and exemplary damages against Defendants, in an amount according to proof.

## **THIRTEENTH CLAIM FOR RELIEF**

## **(Fraudulent Misrepresentation by Plaintiffs against Defendants Ou, Sigelei, and Laisimo)**

163.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-162 of this First Amended Complaint.

164.     Defendants Sigelei, Laisimo, and Ou, acting on behalf of Sigelei and Laisimo, represented to Plaintiff in unequivocal statements that Sigelei and Laisimo would remit payment to Asmodus for its labor and cost of parts and replacements for serving as the U.S. warranty and service center for Sigelei and Laisimo.

165.     The above statements were false representations of a material fact to Asmodus and Yin. Defendants knew at the time that they were made that the representation were false or made such statements recklessly and without regard for their truth, and Defendants intended Asmodus to rely upon these representations.

166.     Plaintiff Asmodus reasonably relied to their detriment upon the false representations, and performed services through making inspections, repairs, and replacements for defective vaping products for Sigelei and Laisimo.

167.     Plaintiff Asmodus' reliance was a substantial factor in causing damage to Asmodus.  As a result of Defendants' false representations, Asmodus suffered damages in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### (Negligent Misrepresentation against Defendants Ou, Sigelei, and Laisimo)

168.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-167 of this First Amended Complaint.

169.     Alternatively, Plaintiff is informed and believes, and upon that basis alleges, that the foregoing representations made by Sigelei and Laisimo to the Plaintiffs that they would remit payment to Asmodus for its labor and cost of parts and replacements for serving as the U.S. warranty and service center for Sigelei and Laisimo were made without reasonable grounds for believing the representations to be true.

170.     Defendants intended to induce Asmodus to rely on its misrepresentations, and Plaintiff reasonably relied on the representations, and, inter alia, performed services through making inspections, repairs, and replacements, when, in truth, Sigelei and Laisimo had no reasonable grounds to believe that their representations were true.

171.     As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount to be proven at trial.

### FIFTEENTH CLAIM FOR RELIEF

### (Violation of the Racketeer Influenced and Corrupt Organization Act

### against Defendants Ou and Alter Ego Companies)

### (18 U.S.C. §§ 1962(c) and 1964(c))

172.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-171 of this First Amended Complaint.

173.    Beginning from approximately 2015 and continuing through the date of filing of this First Amended Complaint, Defendants Ou, the Alter Ego Companies and Does 1-50 have, directly, indirectly, and knowingly participated in the conduct of, and operation and management of Sigelei, an enterprise by which they are employed or associated with, and whose conduct and activities affect interstate or foreign commerce (the "Criminal Enterprise"), through a pattern of racketeering activity, and in so doing have injured Asmodus in its business and property. Defendants' actions include multiple, related acts in violation of: 18 U.S.C. § (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a) (criminal copyright infringement), and18 U.S.C. §2320 (trafficking in counterfeit goods).

174.    The predicate acts alleged herein occurred after the effective date of 18 U.S.C. §§ 1861 et seq., and the last such act occurred within 10 years after the commission of a prior act of racketeering activity. These racketeering activities include repeated acts of:

(a)    Criminal Copyright Infringement. Defendants Ou and Does 1-50 willfully infringed and continue to willfully infringe Asmodus' copyright, including the ASMODUS design mark, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(a), (c), as alleged with greater particularity in the foregoing paragraphs.

(b)     Trafficking in Counterfeit Goods. Defendants Ou and Does 1-50 intentionally trafficked and continue to intentionally traffic in goods while knowingly using a counterfeit mark on and in connection with such goods, and attempted and conspired to do so, including by selling non-genuine products bearing the ASMODUS and SNOW WOLF design and word marks and by using the ASMODUS and SNOW WOLF marks, including on packaging, to sell goods bearing the marks in a manner likely to deceive and cause mistake and confusion, all in violation of 18 U.S.C. § 2320(a) (1,2) as alleged with greater particularity in the foregoing paragraphs.

(c)     Mail and Wire Fraud. The Criminal Enterprise was and is engaged in a scheme to defraud involving the conduct set forth herein, including by willfully infringing upon Asmodus' intellectual property rights, counterfeiting Asmodus' goods, misleading consumers and making false and fraudulent statements to Asmodus' distributors, resellers, retailers, and consumers, all in an effort to unlawfully hijack Asmodus' business, property, and rights. Defendants Ou and Does 1-50, having devised such a scheme to defraud, did for the purpose of furthering and executing this scheme transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures, and sound, and deposit or caused to be deposited matters or things to be sent or delivered by mail and by commercial interstate carriers, and take or receive matters or things therefrom, in violations of 18 U.S.C. § 1341, 18 U.S.C. § 1434, 18 U.S.C. § 1346, and 18 U.S.C. § 2, including without limitation: by transmitting documents in furtherance of the fraudulent scheme, by willfully infringing upon  Asmodus' copyrights and falsely purporting to advertise and sell genuine Asmodus products, by causing the publication on the internet through Facebook and Wechat of fraudulent and infringing videos that, among other things, make counterfeit use of the ASMODUS, SNOW WOLF, MINIKIN, HELVE marks and products while purporting to

advertise and sell genuine Asmodus products, when the products are actually unauthorized counterfeit products.

(d)     The Plaintiffs have been injured in its business or property as a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), including injury by reasons of the predicate acts constituting the pattern of racketeering activity, as alleged with greater particularity in the foregoing paragraphs.

(e)     As a result of Defendants' violations of 18 U.S.C. § 1962(c), Asmodus has suffered substantial damages, in an amount to be proved at trial. Pursuant to 18 U.S.C. § 1964(c), Asmodus is entitled to recover treble its general and special compensatory damages, plus interest, and costs and attorney's fees incurred by reason of Defendants' violations of 18 U.S.C. § 1962(c).

## SIXTEENTH CLAIM FOR RELIEF

### (Conspiracy to Violate the Racketeer Influenced and Corrupt Organization Act against

### Defendants Ou and Alter Ego Companies)

### (18 U.S.C. §§ 1962(d) and 1964(c))

175.    Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-173 of this First Amended Complaint.

176.    Beginning from approximately 2015 through the date of filing of this First Amended Complaint, in the Central District of California and elsewhere, Defendants Ou and Does 1-50, and others acting in concert with or on behalf of them, knowingly, willfully, and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(d) by furthering, promoting, and facilitating the Criminal Enterprise as detailed above, in violation of 18 U.S.C § 1962(c).

177.     In furtherance of this unlawful conspiracy and its multiple objects, as alleged

herein, Defendants Ou and various co-conspirators committed numerous overt acts, including but

not limited to those set forth above.

178.     The Plaintiffs have been injured in their business or property as a direct and

proximate result of Defendants' violations of 18 U.S.C. § 1962(d), including injury by reason of

the predicate acts constituting the pattern of racketeering activity.  As a result of the conspiracy

between and among Defendants to violate 18 U.S.C. § 1962(c), the Plaintiffs have suffered

substantial damages in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), the

Plaintiffs are entitled to recover treble their general and special compensatory damages, plus

interest, costs, and attorney's fees incurred by reasons of Defendants' violation of 18 U.S.C. §

1962(d).

## SEVENTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment against Defendants Ou and Alter Ego Companies)

179.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-180 of this

First Amended Complaint.

180.     As a direct and proximate result of the misconduct set forth above, Defendants

have been unjustly enriched, to Plaintiffs' detriment.  The Plaintiffs seek a worldwide accounting

and disgorgement of all ill-gotten gains and profits resulting from Defendants' inequitable

activities detailed above.

## EIGHTEENTH CLAIM FOR RELIEF

### (Breach of Oral Contract against Defendant Ou)

181.     Plaintiff Yin incorporates and re-allege paragraphs 1-180 of this First Amended

Complaint.

182.   In or around September 2015, Yin agreed to lend, and Ou agreed to repay Yin for monies towards Ou's bills, which includes utilities and other miscellaneous expenses.

183.   In particular, Ou requested that Yin pay the money Ou owed to Southern California Gas, Edison electricity, and Cucamonga Valley Water District, *inter alia*. From September 2015 through March 2016, Yin has advanced to Ou and paid his bills in the amount of $6,135.57.

184.   Yin has repeatedly requested that Ou repay Yin these funds, however, Defendant Ou has breached the oral contract by repeatedly refusing to re-pay Plaintiff Yin.

185.   Defendant Ou's breach goes to the heart of the oral contract and, accordingly, Plaintiff Yin is entitled to recover Plaintiff Yin's damages directly and proximately caused by Defendant Ou's breach of the oral contracts plus prejudgment interest.

## NINETEENTH CLAIM FOR RELIEF

### (Fraud against Defendants Ou)

186.   Plaintiff Yin incorporates and re-alleges paragraphs 1-185 of this First Amended Complaint.

187.   Defendant Ou solicited a loan from Plaintiff Yin and induced Yin to enter into the oral contract alleged above to lend Defendant Ou money and pay Ou's bills, by Ou representing that he would repay Yin for the advancing the money.

188.   In truth, Ou's representation was false, and Ou never intended to remit payment to Yin for advancing money to pay for Ou's bills.

189.   Yin is informed and believes, and upon that basis alleges, that Ou knew that the forgoing representations were false and untrue at the time that he made them, and that the representations were made with the intent to deceive and defraud Yin by inducing him to loan money to Ou that Ou had no intention of repaying.

190.    Yin reasonably relied on the Ou's representations, and lent Ou money by advancing money and paying Ou's bills on his behalf.

191.    As a direct and proximate result of the foregoing, Yin has incurred damages in the amount to be proven at trial.

192.    Yin is informed and believes, and upon that basis alleges, that in committing the foregoing wrongful acts, Ou acted intentionally, with malice and in conscious disregard to Yin's rights and resulting damages. As a result, Yin is also entitled to an award of punitive and exemplary damages against Ou, in an amount to be proven at trial.

## **TWENTIETH CLAIM FOR RELIEF**

### **(Fraudulent Misrepresentation against Defendant Ou)**

193.    Plaintiff Yin incorporates and re-alleges paragraphs 1-192 of this First Amended Complaint.

194.    Defendant Ou represented that he would remit payment to Yin for lending and advancing money to Ou to pay for Ou's bills.

195.    The above statements were false representations of material fact to Yin. Ou knew that the representations were false, or made such representations recklessly and without regard for their truth, and Ou intended Yin to rely upon the representations.

196.    Yin reasonably relied upon the false representations, and performed services through advancing money and paying Ou's bills.

197.    Plaintiff Yin detrimentally relied on Ou's false representations. As a result of Ou's false representations, Yin suffered damages in an amount to be proven at trial.

**TWENTY-FIRST CLAIM FOR RELIEF**

**(Negligent Misrepresentation against Defendant Ou)**

198.     Plaintiff Yin incorporates and re-alleges paragraphs 1-197 of this First Amended Complaint.

199.     Alternatively, Plaintiff Yin is informed and believes, and upon that basis alleges, that the foregoing representations that Ou would repay Yin for the money that Yin advanced to Ou for Ou's bills, were made without reasonable ground for believing the representations to be true.

200.     Ou intended to induce Yin to rely on its misrepresentations, and Yin reasonably relied on the representations and, *inter alia*, paid Ou's bills, when, in truth, Ou had no reasonable grounds to believe that his representations that he would pay Yin back were true.

201.     As a direct and proximate result of the foregoing, Plaintiff Yin has incurred damages in the amount to be proven at trial.

**TWENTY-SECOND CLAIM FOR RELIEF**

**(Statutory Trademark Infringement against Defendant Walker)**

**(15 U.S.C. §1114)**

202.     Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-201 of this First Amended Complaint.

203.     Plaintiff Yin owns, and Asmodus has the exclusive right to use, the federally registered ASMODUS word and design marks (collectively the "ASMODUS Trademarks") in connection with Asmodus' products. The ASMODUS Trademarks are highly distinctive and fanciful, and have earned a strong secondary meaning within the vaping products market.

204.     Defendant's unauthorized and wrongful use of the ASMODUS Trademarks on directly competing products has infringed, and is infringing, the ASMODUS Trademarks.

205.     Defendant's infringing use of the ASMODUS Trademarks is likely to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and/or association of Defendant and his products with those of Asmodus, and is likely to cause confusion, mistake, or deceive consumers as to the origin, sponsorship, and/or approval by Asmodus of Defendant's products.  Such likelihood of confusion is magnified by Defendant's intentional use of deceptively similar product packaging.

206.     Defendant's infringing use of the ASMODUS Trademarks enables Defendant to benefit unfairly from Asmodus' reputation and success, thus giving Defendant's infringing products sales and commercial value they would not otherwise have.

207.     Asmodus and Yin are informed and believe, and on that basis allege, that Defendant has ill-gotten profits by virtue of his infringement of the ASMODUS Trademarks.

208.     Plaintiffs have suffered and will continue to suffer irreparable harm from Defendant's infringement of his registered trademarks insofar as his valuable goodwill is being devalued and misappropriated by Defendant's continuing infringement. Plaintiffs Asmodus and Yin have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, and goodwill and confusion of potential customers flowing from Defendant's infringing activities. Pursuant to 15 U.S.C. § 1116, Plaintiffs Asmodus and Yin are entitled to preliminary and permanent injunctive relief against Defendant's continuing infringement of their Plaintiffs' registered trademarks. Unless enjoined, Defendant will continue his infringing conduct.

**TWENTY-THIRD CLAIM FOR RELIEF**

**(Common Law Trademark Infringement of the SNOW WOLF Trademarks against**

**Defendants Walker)**

209. Plaintiffs Asmodus and Yin incorporate and re-allege paragraphs 1-208 of this First Amended Complaint.

210. Beginning in 2014 and continuing thereafter, Plaintiffs have made commercial use of their SNOW WOLF trademarks in interstate commerce in connection with the sale and distribution of their vaping products as alleged herein.

211. Within the market for vaping products, the SNOW WOLF word and design marks have developed exceptionally strong goodwill and an exceptionally strong secondary meaning as identifying Asmodus' products and/or as coming from a single source. For the foregoing reasons, Defendant has falsely represented to the trade and consuming public that he is selling authentic SNOW WOLF products or that his products derived from it.

212. Defendant's use of his infringing marks is likely to cause confusion, and has already caused confusion and mistake, and is likely to and has already deceived the consuming public as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, and/or approval by Plaintiff of Defendants' goods, services, and commercial activities.

213. Defendant's use of SNOW WOLF marks has enabled him to benefit unfairly from Plaintiffs' reputation and success, thereby giving Defendants' business a market share and commercial value that they would not otherwise enjoy.

214. Plaintiffs have sustained damages as a direct and proximate result of Defendant's infringement of Plaintiffs' trademarks as alleged herein.

215.    Plaintiffs will suffer and are suffering irreparable harm from Defendant's infringement of SNOW WOLF marks insofar as Plaintiffs' invaluable good will and market share is being eroded by Defendant's continuing infringement. Plaintiffs have no adequate remedy at law to compensate them for their loss of business reputation, market share, sales representatives, customers, good will, and confusion of potential customers flowing from Defendant's infringing activities. Plaintiffs are entitled to a preliminary and permanent injunction against Defendant's continuing infringement of Plaintiffs' SNOW WOLF trademarks. Unless enjoined, Defendant will continue his infringing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Asmodus, Inc. and Hsueh Cheng "Eddie" Yin pray as follows:

1.      That Defendants, their agents, servants, employees, and all persons acting in concert with them, be preliminarily and permanently enjoined from engaging in the unlawful conduct set forth herein, including that they be enjoined from the following: directly or indirectly infringing Plaintiffs' ASMODUS and SNOW WOLF word and design trademarks; directly or indirectly infringing Plaintiffs' MINIKIN and HELVE trademarks; making any commercial use, use in commerce, or references to the ASMODUS, NOW WOLF, MINIKIN or HELVE marks; directly or indirectly infringing on Plaintiffs' copyrighted Asmodus mark; and from otherwise engaging in unfair competition with Asmodus.

2.      An order directing the United States Patent and Trademark Office to cancel Defendants' "SNOW WOLF" mark registered pursuant to Certificate of Registration No. 4,691,744.

3.      That Asmodus recover its actual damages and lost profits, and that it be awarded an amount equal to Defendants' unjust enrichment to the extent that such unjust enrichment is not reflected in the award of damages, and that a constructive trust in favor of Asmodus be imposed over Defendants' ill-gotten gains and profits.

4.      That Defendants be ordered to pay punitive and exemplary damages in a sum sufficient to punish and make an example of them, and deter them and others from similar wrongdoing.

5.      That Defendants be ordered to pay trebled general and special damages, together with interest thereon, and costs and attorneys' fees, incurred by reason of their violations of 18 U.S.C. § 1962(c)-(d).

6.      That Defendants pay to Plaintiffs the full cost of this action and Plaintiffs' attorney's fees and investigator's fees.

7.      That Plaintiffs have such other and further relief as the Court may deem just and proper.

**DATED:** August 2, 2016                               **INHOUSE CO.**


                                        By:     s/s Alexander Chen
                                                Alexander Chen, Esq.
                                                Omid Shabani, Esq.
                                                Attorney for Plaintiffs Asmodus, Inc. and
                                                Hsueh Cheng "Eddie" Yin

FIRST AMENDED COMPLAINT