Alexander Chen [SBN 245798]
Alexc@inhouseco.com
Omid Shabani [SBN 267447]
Os@inhouseco.com
INHOUSE CO.
1 Almaden Blvd Suite 810
San Jose, Ca. 95113
Telephone: (408) 918-5393
Facsimile: (714) 882-7770

Attorney for Plaintiffs,
Asmodus, Inc. and Hsueh Cheng Yin

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASMODUS, INC.**, a California corporation, **Hsueh Cheng Yin**, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> **JUNBIAO OU, an individual; SHENZHEN SIGELEI TECHNOLOGY CO., LTD**, a Chinese company; **DONGGUAN SHENXI HARDWARE ELECTRONICS TECHNOLOGY CO., LTD**, a Chinese company; **DONGGUAN WEHE ELECTRONIC TECHNOLOGY Co. Ltd.**, a Chinese company; **SHENZHEN LSM TECHNOLOGY Ltd.**, a Chinese company; ACM Supplies Inc; **GLOBAL VAPING LLC**, a Nevada limited liability company; Isaac Walker, an individual and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.:  5:16-cv-03305-EJD <br> Assigned To: Hon. Edward J. Davila <br><br> PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION <br><br> Date:       March 9, 2017 <br> Time:       9:00 am <br> Courtroom:  4 |

Plaintiffs' Notice of Motion and
Motion for Preliminary Injunction

1

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

**PLEASE TAKE NOTICE** that on March 09, 2017 at 9:00 a.m. or as soon thereafter as the matter can be heard, Courtroom 4, 5th Floor, United States District Court for the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs ASMODUS INC. ("Asmodus") and HSUEH CHENG YIN ("Yin") (collectively, the "Plaintiffs") will, and hereby do, move for a preliminary injunction, prohibiting defendants JUNBIAO OU ("Ou"), SHENZHEN SIGELEI TECHNOLOGY CO., LTD, ("Sigelei"); DONGGUAN SHENXI HARDWARE ELECTRONICS TECHNOLOGY CO., LTD. ("Shenxi"), DONGGUAN WEHE ELECTRONIC TECHNOLOGY Co. Ltd. ("Wehe"), SHENZHEN LSM TECHNOLOGY Ltd. ("LSM"), ACM Supplies Inc. ("ACM"), GLOBAL VAPING LLC ("Global Vaping"), and Isaac Walker ("Walker") (collectively, "Defendants"), their agents and all others acting in concert with them, from doing the following:

(i) referencing, mentioning, and/or using in any way Plaintiffs' ASMODUS Word and Design Marks (collectively "ASMODUS Trademarks"), ASMODUS design Copyright, MINIKIN Mark, and/or HELVE Mark in connection with the sale of products;

(ii) referencing, mentioning, and/or using in any way Plaintiffs' ASMODUS Trademarks, ASMODUS design Copyright, or MINIKIN and/or HELVE marks or any other mark confusingly similar to the ASMODUS marks, ASMODUS' design copyright, and/or MINIKIN or HELVE marks;

(iii) copying or reproducing, in whole or in part, any text, photographs, graphics, or other copyrighted expression from ASMODUS' design Copyright;

(iv) selling, advertising, making any other use of a design, pattern, signal, mark displayed upon digital screens, or packaging that is confusingly similar to the ASMODUS Trademarks, ASMODUS

Plaintiffs' Notice of Motion and
Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

2

design Copyright, and/or Plaintiffs' MINIKIN and/or HELVE marks, including the products currently sold by Defendants that display the ASMODUS Trademarks, as well as Plaintiff's MINIKIN and HELVE marks.

(v) advertising, marketing, or describing products displaying, or otherwise making any use of the ASMODUS Trademarks, the ASMODUS design Copyright, and/or Plaintiffs' MINIKIN and/or HELVE marks, in any manner likely to mislead consumers as to the source of such products and/or their affiliation with Asmodus;

(vi) interfering with Asmodus' relationships with its leaders, members, distributors, customers, marketers, including, without limitation, by contacting Asmodus' existing leaders, members, distributors, customers and marketers for the purpose of soliciting business or making false or misleading statements or otherwise discussing Asmodus or its products and Trademarks with such leaders, members, distributors, and marketers;

(vii) using or referring to Plaintiffs' names and/or likenesses for any commercial purpose; and

(viii) posting, maintaining, displaying or performing promotional videos or advertisements for products that contain, display, or otherwise make use of ASMODUS Trademarks, ASMODUS Copyright, and/or Plaintiffs' MINIKIN and HELVE marks, including, without limitation those posted on Defendants' websites, including, but not limited to, Sigelei's website (www.sigelei.com), Laisimo's website, and/or Global Vaping's website (www.globalvaping.com);

(ix) immediately cease and desist from production of any counterfeit product, which display, or make any use of the ASMODUS Trademarks, ASMODUS Copyright, and/or the MINIKIN and/or HELVE marks.

Plaintiffs further seek a preliminary injunction requiring Defendants, their agents, and all others acting in concert with them to:

Plaintiffs' Notice of Motion and
Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

3

(i) turn over and deposit with the Court or Plaintiffs' Counsel all existing products in their possession, custody, or control that display or otherwise make any use of the ASMODUS Trademarks, or MINIKIN or HELVE marks, or the ASMODUS Copyright;

(ii) post a notice on the home pages of all Defendants' websites, stating both in English and Chinese, that:

"This Company has been required by the United States District Court for the Northern District of California to post this notice in order to avoid further confusion in the marketplace. The ASMODUS, MINIKIN, and HELVE products formerly sold through this website have no affiliation with genuine ASMODUS products that bear or display ASMODUS, MINIKIN, or HELVE Trademarks. The Court has ordered that this Company may no longer sell ASMODUS, MINIKIN, or HELVE products in order to avoid confusion between those products and those sold by ASMODUS, Inc."

This motion is based on this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the concurrently filed Declaration of Hsueh Cheng Yin, Declaration of Renson Lee, Declaration of Jayson Sy, Declaration of Tony Tran, and all other papers and arguments submitted in connection with this matter and any matters of which the Court may take judicial notice.

DATED: October 04, 2016          By:     /s/ Alexander Chen

Alexander Chen, Esq.
Email: alexc@inhouseco.com
InHouse Co.
1 Almaden Blvd Suite 810
San Jose, Ca. 95113
Tel: (949) 250-1555
Fax: (714) 882-7770
Attorney for Plaintiffs,
Asmodus, Inc. and Hsueh Cheng Yin

Plaintiffs' Notice of Motion and                          Asmodus Inc., et. al. v. Ou, et. al.
Motion for Preliminary Injunction                         Case No. 5:16-cv-03305-EJD

4

# TABLE OF CONTENTS

**Preliminary Statement** …………………………………………………………………… 1

**FACTUAL BACKGROUND**…………………………………………………………...2

    **A.**    **Asmodus' Products and Intellectual Property** ………………………………..2

    **B.**    **Defendants' Counterfeiting** …………………………………………………..3

    **C.**    **Defendants' Exploitation of Plaintiffs' Marks** ………………………………...6

    **D.**    **Defendant Walker's infringement of Plaintiffs' Trademark** …………………7

    **E.**    **The Consequences Of Defendants' Illegal Conduct** ……...................................7

**ARGUMENT** ……………………………………………………………………...12

**I.**    **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS** ………………………………………………………………………………13

    **A.**    **Trademark Infringement**……………………………………………...13

        **1.**    **Plaintiffs Own Protectable Marks** ……………………………….14

        **2.**    **There Is a Likelihood of Confusion** ………………………………...14

    **B.**    **Copyright Infringement** ……………………………………………...17

**II.**   **PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION** ……………………………………………...17

    **A.**    **Harm to Goodwill and Reputation** ……………………………………18

    **B.**    **Loss of Market Share, Customers, and Sales** ………………………………...19

**III.**   **THE BALANCE OF HARDSHIPS FAVORS AN INJUNCTION** …………………19

**IV.**   **THE PUBLIC INTEREST FAVORS AN INJUNCTION** …………………………..20

**V.**   **THE COURT SHOULD NOT REQUIRE A BOND** ………………………………..20

**CONCLUSION** …………………………………………………………………...21

# TABLE OF AUTHORITIES

## CASES

*Advertise.com, Inc. v. AOL Advertising, Inc.,*
    616 F.3d 974 (9th Cir. 2010) ……………………………………………………14

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011)……………………………………………...…12

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ……………………………...……………...15, 16

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3d Cir. 1983) …………..……………………………………..20

*Apple Inc. v. Psystar Corp.,*
    673 F.Supp.2d 943 (N.D. Cal. 2009) ……………………………………….18, 20

*Apple, Inc. v. Samsung Elecs. Co.,*
    2012 WL 2572037 (N.D. Cal. July 01, 2012) ……………………………………...19

*Barahona-Gomez v. Reno,*
    167 F.3d 1228 (9th Cir. 1999) …………………………………………………..21

*Brookfield Comm'cns, Inc. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999) …………………………………………14, 16

*Cadence Design Sys. v. Avant! Corp.,*
    125 F.3d 824 (9th Cir. 1997) …………………………………………………20

*California ex rel. Van De Kamp v. Tahoe Regional Planning Agency,*
    766 F.2d 1319 (9th Cir. 1985) ………………………………………………..21

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988) …………………………………………………..13

*Church of scientology Int'l v. Elmira Mission Church of Scientology,*
    794 F.2d 38 (2d Cir. 1986)………...……………………………………………..16

*CytoSport, Inc. v. Vital Pharms., Inc.,*
    617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) ……………………………………18, 20

*Dreamworks Prod. Grp. V. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) …………………………………………………..15

*Exctopix v. Liberty Livewhire Corp.,*
    178 F.Supp.2d 1125 (C.D. Cal. 2001) …………..…………………………………………16

*Feist publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) …………………………………………………….…………………..17

*Filipino Yellow Pages Inc. v. Asian Journal Publ'ns Inc.,*
    198 F.3d 1143 (9th Cir. 1999) ……………..………………………………………………14

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*.,
    618 F.3d 1025 (9th Cir. 2010) ……………………………………………………………..15

*Flynt Distrib. Co. v. Harvey,*
    734 F.2d 1389 (9th Cir. 1984)…………………………………………………………...12

*Grocery Outlet, Inc. v. Albertson's Inc.,*
    497 F.3d 949 (9th Cir. 2007) ……………………………………………………………13

*Goto.com v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ……………………………………………………13, 15

*i4i Ltd. P'ship v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010) …………………………………………………………...19

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.,*
    676 F.3d 841 (9th Cir. 2012) ……………………………………………………………17

*Lahoti v. VeriCheck, Inc.,*
    586 F.3d 1190 (9th Cir. 2009) ………………………………………………………....14, 15

*Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com,*
    2012 WL 2576216 (D. Nev. July 3, 2012) …………………………………………...20

*MAI Systems Corp. v. Peak Computer Inc.,*
    991 F.2d 511 (9th Cir. 1991) ……………………………………………………………13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH,*
    *571 F.3d 873 (9th Cir. 2009)*…………………………………………………..……………12

*Maxim Integrated Prods. Inc. v. Quintana,*
    654 F. Supp. 2d 1024 (N.D. Cal. 2009) …………………………………………………18

*Montana Silversmiths, Inc. v. Taylor Brands, LLC,*
    2012 WL 405631 *14 (D. Mont. Feb. 08, 2012) …………………………………17, 18

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,*
    22 F.3d 546, 552 (4th Cir. 1994) …………………………………………………..19

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
    638 F.3d 1137 (9th Cir. 2011) ……………………………………………………..15

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental Inc.,*
    944 F.2d 597 (9th Cir. 1991) ……………………………………………………….18

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    659 F.3d 1142 (Fed. Cir. 2011) ……………………………………………………19

*Rodeo Collection Ltd. v. West Seventh,*
    812 F.2d 1215 (9th Cir. 1987)…………………………………………....12, 13, 17

*Sardi's Restaurant Corp. v. Sardie,*
    755 F.2d 719 (9th Cir. 1985) ………………………………………………………13

*Seed Servs., Inc. v. Winsor Grain, Inc.*
    2012 WL 1232320 (E.D. Cal. Apr. 12, 2012) …………………………………16, 19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,*
    96 F.3d 1217, as modified, 97 F.3d 1460 (9th Cir. 1996) ………………………….14

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
    739 F.2d 1415 (9th Cir. 1984) ……………………………………………………..13

*Starcom Mediavest Grp., Inc. v. Mediavestw.com,*
    2010 WL 3564845 (N.D. Cal. Sept. 13, 2010) ……………………………………..21

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) ……………………………………………………18, 19

*Thompson v. Tega-Rand Int'l,*
    740 F.2d 762 (9th Cir. 1984) ………………………………………………………13

*University of Texas v. Camenisch,*
    451 U.S. 390 (1981)………………………………………………………………...12

*V.L. v. Wagner,*
    669 F. Supp. 2d 1106 (N.D. Cal. 2009)……………………………………………12

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008)…………………………………………………………………..12

# STATUTES

17 U.S.C. § 501 ……...…………………………………………………………………17

17 U.S.C. § 502 ………………………………………………………………………17

Fed. R. Civ. P. 65 ………………………………………………………………20, 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

This is a case of a manufacturer-gone-rogue who misused its position to commit systematic and wholesale theft of its customer's business. A preliminary injunction is necessary to prevent the completion of this unethical and irreparably harmful scheme. Plaintiff Hsueh Cheng Yin ("Yin") is a serial entrepreneur who has started several start-up companies. Yin became involved in the vaping industry in 2013 and has since been the principal of a vaporizer shop in Gardena, California, that sold and distributed various vaping products. Yin and his team have gained much experience promoting and distributing vaping products and acquired quite a following of smaller retail purchasers. Thereafter, Yin decided to start a new company for the purpose of selling its own vaping products and in 2014 he created Asmodus, Inc.

Plaintiff Asmodus Inc. ("Asmodus") is a nationally recognized distributor and seller of vaping products located in Paramount, California. Since April 2014, Asmodus has sold its products using its ASMODUS word and design marks ("ASMODUS Trademarks"). Yin, who founded and owns Asmodus, is also the registered owner of the ASMODUS Trademarks and has granted an exclusive license of those Trademarks to Asmodus, Inc.

Defendant Ou individually and through his alter-ego companies, Sigelei, Shenxi, and Wehe, has set out to compete unfairly with Asmodus and ultimately to steal its business altogether. These Defendants launched infringing counterfeit products and engaged in a campaign to steal Asmodus' business and customers, causing Asmodus' sales to plummet from an average of approximately $700,000.00 in monthly sales with respect to "Minikin" and "Helve" as of March 2016 with a projected annual sales revenue of $8.4 million dollars to what is now less than half of that, at approximately $3.6 million per annum. Declaration of Yin ("Yin Decl."), ¶ 21. Due to severe market disruption caused by the Defendants' counterfeiting and infringing acts, "Minikin" and "Helve" have been forced to be taken off market temporarily several times already. *Id.*

Because Minikin and Helve are the primary products of the Plaintiff, Defendants have stolen virtually the entirety of Asmodus' U.S. sales and are cutting substantially into its foreign sales,

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

1

threatening Asmodus' very existence. Yin Decl., ¶ 22. As such, Plaintiffs respectfully urge the Court to issue a preliminary injunction to prevent the Defendants from destroying Asmodus' business entirely.

**FACTUAL BACKGROUND**

### A. Asmodus' Products and Intellectual Property

Based in Paramount, California, Asmodus is a nationally recognized distributor and seller of vaping products. Yin Decl., ¶ 3. Asmodus' vaporizers have been highly successful and the company has earned a legendary reputation for delivering high-end vaporizers at affordable prices.

Since April 2014, Asmodus has sold its products using its ASMODUS Trademarks. *See* Yin Decl., Exhits ("Ex.") A, B. Plaintiff Yin is Asmodus' owner, founder and the registered owner of the ASMODUS word and design marks exclusively licensed to Asmodus, Inc. *Id.*

In 2014, to protect the commercial integrity of his valuable and unique products and to ensure his exclusive ownership of those marks, Yin registered two key marks:

1. The ASMODUS Word Mark, No. 86,258,257 with a first-use-in-commerce date as of July, 2014. Yin Decl., ¶¶ 11-12, Ex. A.

2. The ASMODUS Design Mark, No. 86,271,771, with a first use-in-commerce date of July 2014. Yin Decl., ¶ 11, 13, Ex. B.

Yin also obtained U.S. Copyright registration of the ASMODUS design, No. VA 1-908-593 in 2014, with a first publication date of April 3, 2014. Yin Decl., ¶ 14, Ex. C. The copyrighted ASMODUS design is shown below:



Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

2

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

In addition, Asmodus applied to register various other trademarks, including the MINIKIN and HELVE marks. Yin Decl., ¶ 15. These applications are currently pending before the USPTO. *Id.* USPTO has finished examination and has now scheduled these marks to be published. *Id.* Asmodus has been using the MINIKIN mark for its products since as early as October 2015. Yin Decl., ¶¶ 16-17, Ex. D. Asmodus has also been using the HELVE mark for its products since as early as December 2015. Yin Decl., ¶¶ 18-19, Ex. E.

The authentic products sold by Asmodus prominently display the ASMODUS Trademarks, copyrighted graphic image, and the MINIKIN marks, as shown below:



As shown above, the authentic products sold by Asmodus prominently display the ASMODUS Trademarks and the HELVE mark.

B.   **Defendants' Counterfeiting**

Defendants Sigelei, Laisimo, Shenxi, and Wehe (each owned or, at minimum, controlled by defendant Ou) have acted individually or in cooperation with each other and Ou to manufacture, promote, distribute, and sell counterfeit "ASMODUS" products, including counterfeit "MINIKIN" products, and counterfeit "HELVE" products, as well as other products making use of or displaying ASMODUS Trademarks. *See* Declaration of Tony Tran ("Tran Decl.") ¶¶ 8-10; Yin Decl., ¶¶ 20-22. Defendants falsely use the ASMODUS word mark in their product, displaying it on the digital screen upon turning on the vaporizer. *Id.* at ¶ 10. The Defendants' infringing user manual also contains references to the ASMODUS Trademarks.

Furthermore, Defendants are trading on and exploiting the highly valuable goodwill that Asmodus has built for the ASMODUS, MINIKIN and HELVE marks by passing off Defendants' counterfeit products as genuine Asmodus products. Yin Decl., ¶ 20. While Shenxi and Wehe were previously the authorized manufacture of Asmodus' MINIKIN vaping products, they were only authorized to manufacturer genuine MINIKIN products for Asmodus. However, Shenxi and Wehe in fact started manufacturing counterfeit MINIKIN products by producing unauthorized products that used ASMODUS Trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge. Yin Decl. at ¶ 23.

In particular, at the request of Asmodus, Defendants Shenxi and Wehe had manufactured MINIKIN in a variety of colors, including the "gloss finish blue" color. Yin Decl. at ¶ 24. However, after Ou decided to start making knock-off products in competition with Yin, defendant Ou cut off his relationship with Yin and stopped sending products to Asmodus. *Id.* Instead, Shenxi and Wehe—Ou's alter-ego companies—started manufacturing counterfeit MINIKIN vaping products that were for Asmodus, and Ou, through his Alter Ego Companies, sold them to third parties. *Id.* In fact, while Asmodus had once authorized Shenxi and Wehe to manufacture the MINIKIN in the gloss finish blue color ("Blue MINIKIN"), Shenxi and Wehe never delivered these Blue MINIKIN products to Asmodus. *Id.* at ¶ 25. Therefore, Asmodus never had these Blue MINIKIN products, and thus could not have sold them. *Id.* Yet, there are Blue MINIKIN products being sold in the marketplace. *Id*; *See also,* Declaration of Jayson Sy ("Sy Decl."), at ¶ 9.

The photograph below depicts exemplars of counterfeit Blue MINIKIN products sold by Defendants:



Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

4

Yin Decl., at ¶ 25. In fact, to confuse the market, Defendants also sell Minikin packaged with WEHE mark on it. See below:



Yin Decl., ¶ 26. The egregious conduct of defendants can be seen as a close up to the "wheel" one can see that defendants went to the extent of change the wheel "mark" from the letters "ASMODUS" inside the wheel to "WEHEMOD" inside the wheel. Yin Decl., ¶ 27. This is nothing short of a complete rip off of Plaintiff's goodwill. See below:

| Authentic<br><br>( <u>ASMODUS</u> letters inscribed inside the wheel) | Counterfeit<br><br>( <u>WEHEMOD</u> letters inscribed inside the wheel) |
| --- | --- |
|  |  |

*Id*.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

5

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

Additionally, Asmodus introduced its HELVE vaping products in or around December 2015. Yin Decl. at ¶ 28. Shenxi and Wehe were also the authorized manufacture of Asmodus' HELVE vaping products. *Id.* at ¶ 29. While Shenxi and Wehe were only authorized to manufacturer genuine HELVE products for Asmodus, Shenxi and Wehe in fact started manufacturing counterfeit HELVE products by producing unauthorized products that used Asmodus' protected trademarks, which were sold to Asmodus' customers and other third parties without Asmodus' knowledge. *Id.* Asmodus' HELVE vaping products also contain the ASMODUS design mark, and Defendants have blatantly copied the design and trademark wholesale, without making any alterations, and passed off the counterfeits as genuine ASMODUS products. *Id.* The counterfeit HELVE vaping products produced also include the ASMODUS design mark. *Id.*

The photograph below depicts exemplars of counterfeit HELVE products sold by Defendants:

 

*Id.*

Furthermore, Ou has been distributing and selling (through ACM Vape) counterfeit MINIKIN vaping products and HELVE vaping products. Yin Decl. at ¶ 30. ACM Vape also serves as Ou's warranty and service center. Sy Decl., ¶¶ 7-8.

## C. <u>Defendants' Exploitation of Plaintiffs' Marks</u>

Defendants Sigelei and Laisimo have been manufacturing, distributing, and selling unauthorized, infringing, and counterfeit Asmodus vaping products bearing the ASMODUS word and design marks.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

6

Yin Decl., at ¶ 31. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine ASMODUS products. *Id.* Further still, Defendants Shenxi and Wehe, through Ou, have also engaged in a coordinated effort to counterfeit genuine MINIKIN and HELVE products. *Id.*, ¶ 30-33. Defendants have sold and are still selling counterfeit MINIKIN and HELVE products. *Id.* ¶ 33. These counterfeit products are being marketed and sold in a manner designed to cause confusion with genuine MINIKIN and HELVE products. *Id.*

### D.    Defendant Walker's infringement of Plaintiffs' Trademark

Defendant Issac Walker is also trading on and exploiting the extremely valuable goodwill that Asmodus has built for the ASMODUS Trademarks by selling counterfeit products. In particular, Walker is using the eBay seller ID "iwalk29924" and the counterfeit electric vaporizer is being shipped from Oakland, California. Declaration of Tony Tran ("Tran Decl.") ¶¶ 4-11; Yin Decl., ¶ 34. The electric vaporizer from Walker bears the Asmodus warranty card with the ASMODUS Trademarks. Tran Decl., ¶ 8. In fact, the LCD screen on the vaporizer displays "Laisimo" when turning on, yet it displays "Asmodus" when turning off. *Id.*, ¶¶ 9-10.

### E.    The Consequences Of Defendants' Illegal Conduct

Defendants' efforts to hijack Asmodus' business and cause confusion in the marketplace have, to a large extent, been successful. Although not required, there is evidence of actual confusion in this case. *See* Tran Decl., ¶ 3. Furthermore, a quick search on the internet will reveal that Hundreds, if not thousands of postings on blogs across the vaping industries filled with customers asking what are real and what are fake MiniKin and Helve products. Yin Decl., ¶ 36.

For example, this screen shot on the following page, shows a blog thread titled: "Minikin real or fake":

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Yin Decl., ¶ 36.

Yet, in another example, the screen shot shows a blog thread titled: "Is this minikin real"

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Id.*

In this next example, the screen shot shows a blog thread titled: "Asmodus minikin real or fake"

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

9



*Id.*

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

10

Yet another example, the screen shot shows a blog thread titled: "My minikin is authentic or not"



*Id.* Still another example, the screen shot on the next page shows a blog thread titled: "Is the minikin with the WEHE on its box also a legit minikin"



Plaintiffs' Memorandum In Support                           Asmodus Inc., et. al. v. Ou, et. al.
of Motion for Preliminary Injunction                        Case No. 5:16-cv-03305-EJD

11

1
The dramatic fall in Asmodus' sales reveals the damage that Defendants' illegal actions have caused, and are causing upwards of $400,000 in loss of monthly sales and upwards of $4.8 million dollars in loss of annual sales in damage. Yin Decl., ¶ 21. Absent immediate relief, Asmodus, which less than one year ago had a very successful and growing business, will be out of business altogether. Yin Decl., ¶ 37.

## ARGUMENT

A preliminary injunction is required to prevent the Defendants from destroying plaintiffs' business. To obtain preliminary injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH,* 571 F.3d 873, 877 (9th Cir. 2009), quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008). These are not separate tests, but rather "opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987). Alternatively, "a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," and if the irreparable harm and public interest factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation, quotation and editing marks omitted).

The rules of evidence are relaxed when these factors are considered; the Court has discretion to consider even inadmissible evidence in ruling on a motion for preliminary injunction. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("the trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *V.L. v. Wagner,* 669 F. Supp. 2d 1106, 1115 n.8 (N.D. Cal. 2009) ("[O]n a motion for a preliminary injunction, the Court may consider inadmissible evidence, giving such evidence appropriate weight depending on the competence, personal knowledge, and credibility of the declarants."); *see also University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981) ("a preliminary injunction is customarily

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

12

granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits").

In the Ninth Circuit, irreparable injury is presumed from a showing of likelihood of confusion. *Rodeo Collection Ltd.,* 812 F.2d at 1215. Thus, the dual requirements outlined above are in reality a "single test of the likelihood of success on the merits, which in turn depends on a showing of a likelihood of confusion." McCarthy on Trademarks and Unfair Competition, § 30.32 at 30-79. In other words, "a plaintiff is … entitled to a preliminary injunction in a trademark case simply when it shows a likelihood of confusion." *Goto.com v. Walt Disney Co.*, 202 F.3d 1199, 1199, n.5 (9th Cir. 2000). It is well settled that once a party has demonstrated a likelihood of success on the merits of a Lanham Act claim, courts should issue a preliminary injunction to prevent further irreparable harm to the party. Indeed, the Ninth Circuit has proclaimed injunctive relief as a remedy of choice in trademark and unfair competition cases. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989); *Thompson v. Tega-Rand Int'l*, 740 F.2d 762, 763 (9th Cir. 1984); *MAI Systems Corp. v. Peak Computer Inc.*, 991 F.2d 511, 513 (9th Cir. 1991); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1418 (9th Cir. 1984).

## I.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

Although plaintiff is likely to succeed on the merits of all the claims ascertain in the Complaint, plaintiff's motion is based on the claims for trademark and copyright infringement.

### A.  Trademark Infringement

To establish a likelihood of success on the merits of a trademark infringement claim, the plaintiff must establish that it is "(1) the owner of a valid, protectable, mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007); *see also Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985) ([T]o show a probability of success in the causes of action for trademark infringement, false designation of origin, and unfair competition, [the plaintiff] need show that a likelihood of confusion exists.") (citations omitted).

Plaintiffs are highly likely to prevail on their trademark infringement claims as to Defendants' counterfeit use of Plaintiffs' ASMODUS Trademarks which includes the marks MINIKIN and HELVE.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

13

### 1. __Plaintiffs Own Protectable Marks__

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219, *as modified*, 97 F.3d 1460 (9th Cir. 1996). Plaintiffs used their ASMODUS Trademarks and their MINIKIN and HELVE marks, before Defendants used their counterfeit and infringing marks.

Nor can there be any dispute that Plaintiffs' marks are protectable (and, in fact, strong). Because Plaintiffs' ASMODUS Trademarks are registered, "a presumption of validity places the burden of proving genericness upon defendants. *Filipino Yellow Pages Inc. v. Asian Journal Publ'ns Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). "Generic terms are those that refer to 'the genus of which the particular product or service is a species,' *i.e.*, the name of the product or service itself." *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 977 (9th Cir. 2010), quoting *Filipino Yellow Pages,* 198 F.3d at 1147. The ASMODUS Trademarks do not "name" the "product" itself. The marks are not generic; they are therefore valid and protectable.

Likewise, while a registration for them has not yet issued (although USPTO has completed examination and the marks are scheduled to be published,) Plaintiffs' MINIKIN and HELVE marks are also plainly valid and protectable because they are fanciful, or at least arbitrary or suggestive. *Lahoti v. VeriCheck, Inc.* 586 F.3d 1190, 1198 (9th Cir. 2009). "'Suggestive,' 'arbitrary,' or 'fanciful' marks are inherently distinctive" and entitled to trademark protection. *Id.* Accordingly, Plaintiffs' marks are protectable.

### 2. __There Is a Likelihood of Confusion__

The second factor is whether there is a "likelihood of confusion." *Brookfield Comm'cns, Inc. v. W. Coast Entm't Corp.* 174 F.3d 1036, 1053 (9th Cir. 1999). Likelihood of confusion is determined by the eight factor "*Sleekcraft*' test: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. types of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

14

of expansion of the product lines." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011); *see Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts."); *Dreamworks Prod. Grp. V. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) ("The factors should not be rigidly weighed; we do not count beans."). The similarity of the marks, proximity of the goods, and marketing channels used are "the controlling troika in the *Sleekcraft* analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).

Here, there is a high likelihood of confusion resulting from Defendants' counterfeit use of the ASMODUS Trademarks, as well as the MINIKIN and HELVE Marks.

*First*, Plaintiffs' marks are strong. ASMODUS, HELVE, and MINIKIN are fanciful, or at least suggestive or arbitrary, and therefore strong and distinctive marks. *See Lahoti,* 586 F.3d. at 1198.

*Second*, the parties' goods are related and there is a likelihood of confusion that consumers will "assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft,* 599 F.2d at 350. Defendants' products are marketed as identical to those of the Plaintiffs and plainly are intended to supplant Plaintiffs' goods in the marketplace.

*Third*, as shown previously, Defendants' purported marks are confusingly similar to Plaintiffs' marks. Defendants have brazenly used the ASMODUS Trademarks, the HELVE and MINIKIN Marks, and Asmodus' copyright, without authorization of the Plaintiffs. Defendants' counterfeit products use the ASMODUS Trademarks, and copyright, as well as Asmodus' MINIKIN and HELVE Marks, on products that are identical to Plaintiffs' product, and Defendants purport these products to be genuine Asmodus Products. As such, Defendants' counterfeit products are confusingly similar to Asmodus' genuine products.

*Fourth,* there is substantial evidence of actual confusion, as discussed. Even if it were not, "[b]ecause of the difficulty in garnering such evidence," the failure to prove instances of actual confusion is not dispositive." *Sleekcraft,* 599 F.2d at 353.

*Fifth*, the parties use the same marketing channels, including primarily their websites and commissioned sales agents or "leaders" to compete for the same customers. Defendants' highly deceptive and misleading marketing efforts further show that confusion is likely. *See Id.* ("Convergent marketing channels increase the likelihood of confusion.").

*Sixth,* the relevant consumers are direct purchasers who are likely to be confused because even the most discerning eye would likely be misled by Defendants' counterfeiting and copying. Where, as here, the parties' marks are "nearly identical," it "is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination that would enable him or her to discern the difference." *Exctopix v. Liberty Livewhire Corp.*, 178 F.Supp.2d 1125, 1134 (C.D. Cal. 2001). Moreover, that Defendants themselves used to be authorized producers of Plaintiffs' products further contributes to the likelihood of confusion since Defendants previously had a known association with Asmodus. Indeed, Defendants purport to market Asmodus goods in their marketing campaigns. *See Seed Servs., Inc. v. Winsor Grain, Inc.* 2012 WL 1232320, *3 (E.D. Cal. Apr. 12, 2012) ("The fact that Cook used to sell American 'California Gold' brand alfalfa seen in the past adds to the likelihood of confusion notwithstanding the fact that the buyers are assumed to be sophisticated parties."); *see also Church of scientology Int'l v. Elmira Mission Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) ("When [a former licensee], as defendants here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer.").

*Seventh,* There can be no question Defendants chose their marks to create maximum confusion, and not for any valid, independent reason. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark ," *Brookfield,* 174 F.3d at 1059, which plainly happened here.

*Eighth*, to the extent expansion of product lines is at all relevant, the parties are likely to expand similarly as their products are similar.

In sum, Defendants deliberately chose their brands and marks to associate their products with the Plaintiffs. An injunction is required to prevent further and ongoing infringement of Plaintiffs' marks and copyright.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

16

## B. <u>Copyright Infringement</u>

Under the Copyright Act, the Court may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To state a *prima facie* claim for copyright infringement under 17 U.S.C. 501, a plaintiff must prove two elements: 1) ownership of a valid copyright and 2) copying of constituent elements of the work that are original. *Feist publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The plaintiff can establish copying by showing that 1) the defendant had access to plaintiff's work and 2) that the two works are substantially similar. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.* 676 F.3d 841, 846-47 (9th Cir. 2012).

Plaintiffs are very likely to prevail on this claim. Plaintiffs own a valid and subsisting copyright in their U.S. Copyright registration of the ASMODUS design, No. VA 1-908-593 in 2014, with a first publication date of April 3, 2014. Yin Decl., ¶ 14, Ex. C. As discussed previously, Defendants have copied Asmodus' copyrighted design to cause confusion in the market-place, with the goal of stealing Asmodus' goodwill.

Such wholesale copying of original expression for purposes of financial gain is plainly copyright infringement.

## II. <u>PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION</u>

If an injunction is not granted, plaintiffs will suffer substantial irreparable harm that will be impossible to compensate with an award of monetary damages. Irreparable harm "is not difficult to establish" because of the difficulty of adequately compensating a plaintiff for the harm to its reputation and goodwill resulting from trademark or copyright infringement. *See Montana Silversmiths, Inc. v. Taylor Brands, LLC,* 2012 WL 405631 *14 (D. Mont. Feb. 08, 2012) (citation omitted). As the Ninth Circuit has observed: "Once the plaintiff in an infringement action has established likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection Ltd. v. West Seventh,* 812 F.2d 1215, 1220 (9th Cir. 1987).

This requirement is met. Plaintiffs have suffered and will continue to suffer, immediate and serious irreparable harm in the absence of injunctive relief.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

17

## A.    Harm to Goodwill and Reputation

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damages to ongoing recruitment efforts and goodwill, qualifying as irreparable harm"). In the trademark context, even the loss of control over one's reputation or goodwill is irreparable harm. *Maxim Integrated Prods. Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009) ("In trademark cases, irreparable harm is typically found in plaintiff's loss of control over their business reputation, loss of trade, and loss of goodwill."); *see CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) ("If another person infringes the marks, that person borrow the owner's reputation, whose quality no longer lies within the owner's control. A trademark owner's loss of the ability to control its marks, thus, creates the potential for damage to its reputation.") (citation omitted).

Likewise, irreparable harm arises in a copyright case if the defendant's infringement co-opts plaintiffs' sweat-of-the-brow efforts and innovation in the design or development of an original work, such as Plaintiffs' copyrighted ASMODUS design here. *See, eg. Montana Silversmiths, Inc.* 2012 WL 405631 at *14 (finding irreparable harm where plaintiff "has devoted 'years of hard work, investment, innovation, market and product research and development …' to earn 'significant consumer goodwill, brand recognition, [and] a business reputation as an innovator and producer of affordable, quality Western design products and a corresponding competitive market share' which are crucial to its viability and success"); *Apple Inc. v. Psystar Corp.*, 673 F.Supp.2d 943, 949 (N.D. Cal. 2009) (finding irreparable harm where to allow defendants to continue copyright infringement "[w]ould irreparably harm the competitive position and market share of" the plaintiff's product).

In this case, Plaintiffs have devoted years of time and investment into developing and promoting their product and brand, and developed a reputation as a supplier of reliable and effective, high-quality vaping products at an affordable price. By co-opting Plaintiffs' entire business, including their marks, products, copyright, and customers, Defendants have assumed control over Plaintiffs' goodwill and reputation, misled customers and taken substantial steps toward destroying the value of the ASMODUS

brand. Such harms are ongoing and irreparable and not remediable through money damages. *Seed Servs.,* 12 WL 1232320, at \*4 ("If Defendants are permitted to go ahead with their plan to sell 'California Gold' alfalfa seeds to Seed Services's customers, Seed Services will have lost control of its business reputation. The likelihood of irreparable harm is established.")

### B.  Loss of Market Share, Customers, and Sales

A permanent loss of customers or market share to a competitor constitutes irreparable harm. *See e.g. Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841; *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor … the irreparable injury prong is satisfied.") (citation omitted). "[C]ourts are most likely to grant an injunction when the plaintiff and defendant are direct competitors in the same market, because in that context, the potential harm in allowing the defendant to continue its infringing conduct may be the greatest." *Apple, Inc. v. Samsung Elecs. Co.* 2012 WL 2572037, \*45 (N.D. Cal. July 01, 2012) (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1153 (Fed. Cir. 2011)).

Here, Asmodus' market share, customers, and sales have declined precipitously just as Defendants' counterfeit and infringing products have been aggressively marketed to Asmodus customers. Yin Decl., ¶¶ 20-22, 35. If Defendants' marketing and sale of counterfeit products and their infringing conduct is allowed to continue unabated, Plaintiffs will be faced with a permanent loss of market share, customers, and sales—injuries that are not remediable by an award of monetary damages, particularly if they drive Plaintiffs out of business altogether.

## III.  THE BALANCE OF HARDSHIPS FAVORS AN INJUNCTION

The equities fall firmly in Plaintiff's favor. Defendants have employed virtually every unlawful method imaginable to attempt to hijack Plaintiffs' business. On the other hand, other than losing their ability to market, produce, and sell counterfeit products and their ability to infringe on Plaintiffs' trademarks, copyrights, and other rights, Defendants will suffer no "harm" at all from an injunction. In these circumstances, "[w]here the only hardship that the defendant will suffer is lost profits from an

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction

Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD

19

activity which has been shown likely to be infringing," no equitable considerations support defendants. *Cadence Design Sys. v. Avant! Corp.,* 125 F.3d 824, 829 (9th Cir. 1997) ("a defendant who knowingly infringes another's copyright cannot complaint of the harm that will befall it when properly forced to desist from its infringing activities"); *see CytoSport,* 617 F.Supp.2d at 1080 (balance of equities favors plaintiff where "the injunction only asks that [defendant] refrain from using a mark and trade dress for its products which is confusingly similar to [plaintiff's] trademark and trade dress").

## IV.    THE PUBLIC INTEREST FAVORS AN INJUNCTION

"[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated." *Apple Inc.*, 673 F. Supp. 2d at 950; *see Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work"). Likewise, the public interest in avoiding confusion in the marketplace "favors issuance of a preliminary injunction in order to protect Plaintiff's trademark interests and to protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff." *Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com*, 2012 WL 2576216, *3 (D. Nev. July 3, 2012).

The public interest here favors an injunction. The Defendants are engaging in counterfeiting, palming of counterfeit goods as genuine Asmodus goods, and infringing upon Asmodus' marks and copyrights. Defendants' conduct confuses consumers and therefore strikes at the heart of the consumer protection purpose of the federal trademark laws. Defendants are misappropriating for their own benefit Plaintiffs' trademarks and copyrighted original expression in order to further their consumer confusion scheme and defraud the public. By contrast, there is no countervailing public interest consideration that countenances the brazenly infringing and counterfeiting conduct in which the Defendants are currently engaged.

## V.    THE COURT SHOULD NOT REQUIRE A BOND

The Federal Rules of Civil Procedure afford district courts discretion in setting the amount of security, if any, to be posted by a party that seeks and receives a preliminary injunction. *See* Fed. R. Civ.

Plaintiffs' Memorandum In Support
of Motion for Preliminary Injunction
Asmodus Inc., et. al. v. Ou, et. al.
Case No. 5:16-cv-03305-EJD
20

P. 65(c) (requires posting of security "[i]n an amount that the court considers proper"); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (Rule 56(c) invests district court "[w]ith discretion as to the amount of security required, *if any*" in connection with a preliminary injunction) (emphasis added).

As discussed above, the proposed injunction would simply compel defendants to comply with the law. The only hardship Defendants would suffer from an injunction is the enjoinment of their bad faith infringing and counterfeiting conduct; no equitable considerations support Defendants' desire to continue infringing Plaintiffs' rights. The Plaintiffs have made a very strong showing of likelihood of success on the merits. Under the circumstances of this case, no bond should be required for an injunction to issue. *See California ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1326 (9th Cir. 1985) (a strong likelihood of success on the merits favors "[a] minimal bond or no bond at all."); *Starcom Mediavest Grp., Inc. v. Mediavestw.com*, 2010 WL 3564845. *1 (N.D. Cal. Sept. 13, 2010) (Because SMG has made such a strong showing of likelihood of success on the merits and because the [defendant trademark] Registrant's activities have evinced fraudulent intent and bad faith, the Court shall not require a bond at this time.") Should the Court nevertheless find a bond to be necessary in these circumstances, Plaintiffs respectfully request that a bond be set for an amount that does not exceed $50,000.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this motion for a preliminary injunction be granted.

DATED: October 04, 2016        By:        /s/ Alexander Chen

Alexander Chen, Esq.
Email: alexc@inhouseco.com
InHouse Co.
1 Almaden Blvd Suite 810
San Jose, Ca. 95113
Tel: (949) 250-1555
Fax: (714) 882-7770
Attorney for Plaintiffs,
Asmodus, Inc. and Hsueh Cheng Yin

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above and foregoing document has been served

on October 4, 2016 to all counsel of record who are deemed to have consented to electronic service

via the Court's CM/ECF system per Civil Local Rules.  Any other counsel of record will be served

by electronic mail, facsimile and/or overnight delivery.


/s/ Sharon Shepard
Sharon Shepard